754 F.2d 473
 6 Employee Benefits Ca 1041
 Anthony SALADINO, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
I.L.G.W.U. NATIONAL RETIREMENT FUND and Theodore Bernstein,
individually and in his official capacity as
Director of the I.L.G.W.U. National
Retirement Fund, Defendants-Appellees.
 No. 528, Docket 84-7719.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 19, 1984.
Decided Feb. 8, 1985.
 
 Edgar Pauk, Legal Services for the Elderly, New York City (Neal S. Dudovitz, Gill Deford, Nat. Senior Citizens Law Center, Los Angeles, Cal., Bonnie Berns, Central Florida Legal Services, Inc., Daytona Beach, Fla., of counsel), for plaintiff-appellant.
 K. Peter Schmidt, Arnold & Porter, Washington, D.C. (Phyllis J. Cohen, Arnold & Porter, Richard M. Messina, Washington, D.C., of counsel), for defendants-appellees.
 Before FRIENDLY, VAN GRAAFEILAND and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 The plaintiff, Anthony Saladino, appeals from Judge Knapp's denial of his motion for attorney's fees. Saladino's claim for fees arose from an action he brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001-1461 (1982) ("ERISA"), against the International Ladies' Garment Workers' Union National Retirement Fund ("Fund") and Theodore Bernstein, its director, to obtain a copy of the Fund's pension plan. After the case was settled by the Fund's agreement, inter alia, to provide a copy of the plan to Saladino, he sought attorney's fees pursuant to ERISA 29 U.S.C. Sec. 1132(g)(1). The district court denied attorney's fees on the grounds that Saladino was not a "participant" as defined by ERISA 29 U.S.C. Sec. 1002(7) and accordingly was not eligible for such an award. We affirm.
 
 BACKGROUND
 
 2
 Saladino was a member of the I.L.G.W.U. for thirty-three years. His last employment as a union member was in 1966 at the age of 53. In October, 1981, Saladino wrote to the Fund and requested information on how to apply for a pension. In his letter he stated that he left covered employment in 1966 and that he was now 67 years old. The Fund responded, by letter dated November 5, 1981, informing plaintiff that he was not, nor would he become, eligible for pension benefits from the Fund, and provided plaintiff with a copy of a summary plan description which explained the Fund's pension eligibility requirements prepared in the manner and for the purposes prescribed by ERISA 29 U.S.C. Sec. 1022.[1] Prior to the enactment of the Employee Retirement Income Security Act, an employee for whom contributions had been made to the Fund was entitled to pension benefits only if he met a twenty-year minimum service requirement and retired after he reached the age of 65 or, after 1970, the age of 62. As of January, 1976, ERISA introduced mandatory vesting standards and provided that employees who met a ten-year service requirement were entitled to pension benefits when they reached age 62 if they had retired on or after January, 1976.
 
 
 3
 In March, 1982, Saladino, through attorneys, requested copies of the full plan as of 1979, when he reached the age of 65, and 1966, when he retired. The following month, the Fund sent Saladino a short description of the eligibility requirements as they stood in 1966, but no copy of the full plan. Saladino immediately responded with another request for copies of the plan in 1966 and 1979, mentioning that ERISA required pension plans to provide a copy of the plan to him. 29 U.S.C. Sec. 1024(b)(4).[2] None of Saladino's attorneys' correspondence provided facts to support a claim of eligibility under the terms of the summary plan description, however. In May, the Fund informed Saladino that he had no right to a copy of a plan because he was not eligible for a pension and therefore not a participant within the language of ERISA 29 U.S.C. Sec. 1024(b)(4). The Fund stated, however, that if Saladino could provide additional facts bearing on his eligibility, it would reconsider its position.
 
 
 4
 In March, 1983, Saladino filed a class action against the Fund in the district court. He alleged that the Fund was not complying with ERISA's disclosure requirements and had thus breached its fiduciary duty to the plan participants. He sought an injunction requiring compliance with ERISA's disclosure provisions, damages of $100 per day as permitted by ERISA 29 U.S.C. Sec. 1132(c), $5,000 in punitive damages, attorney's fees, and costs. Negotiations appear to have begun almost immediately and, in September, the district court approved a settlement and dismissed the case. In the settlement agreement, the Fund denied all liability but agreed to supply a copy of the plan or plan summary for a reasonable charge to anyone who claimed to have held a job in covered employment since 1965. The Fund also gave Saladino a copy of the plan. Saladino dropped his claims based on non-disclosure, but retained his right to pursue other claims.
 
 
 5
 One of the claims Saladino did not settle was that for attorney's fees under ERISA 29 U.S.C. Sec. 1132(g)(1). His attorneys, employees of non-profit organizations providing legal services, insisted that the attorney's fees issue be omitted from the settlement agreement on ethical grounds.
 
 
 6
 In November, 1983, Saladino moved in the district court for attorney's fees. The district court denied the motion because Saladino was not a "participant" as defined in ERISA 29 U.S.C. Sec. 1002(7) and thus did not have a right to claim attorney's fees under 29 U.S.C. Sec. 1132(g)(1). The district court held that, to be a participant, Saladino either had to make a credible showing that he was vested or that he intended to return to covered employment. We affirm.
 
 DISCUSSION
 
 7
 ERISA 29 U.S.C. Sec. 1132(g)(1) states that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" (emphasis supplied). The term participant is of considerable importance within ERISA's statutory scheme because numerous rights under that scheme are limited to those who are included within that term. In addition to eligibility for attorney's fees under Sec. 1132(g)(1), participants must be sent plan documents at specified times and intervals, Sec. 1024(b)(1); may examine such documents at any time at specified places, Sec. 1024(b)(2); must be sent annual financial information, Sec. 1024(b)(3); must be sent on request copies of plan documents, Sec. 1024(b)(4); must be sent on request once a year information as to the participant's accrued and nonforfeitable benefits, Sec. 1025(a); and can enforce through a civil action in the federal courts ERISA rights, Sec. 1132. The term "participant" itself is defined by 29 U.S.C. Sec. 1002(7) as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit...."
 
 
 8
 We believe that participant is limited to either employees in, or reasonably expected to be in, currently covered employment or former employees with a colorable claim to vested benefits. This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits "may become eligible." A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the term "may become eligible."
 
 
 9
 Our view, moreover, is the only one consistent with the role accorded by the statutory scheme to those who fall within the term participant. The mandatory requirement that plans send certain documents at specified intervals and annual financial information to participants strongly suggests that this group must be easily identifiable and one with a substantial interest in the matters conveyed. Current employees or those reasonably expected to become such and persons with a colorable claim to vested benefits are in that category. Expansion of the group to former employees of many years past or others with no colorable claim to benefits would create uncertainties as to statutory obligations and impose great costs on pension plans for no legislative purpose. Similarly, the provision that plans inform participants who so request of their accrued and nonforfeitable benefits implies that the persons entitled to such disclosure have a demonstrable claim. We believe, therefore, that Congress intended the term participant to limit the various reporting and disclosure obligations imposed on plans to identifiable persons with a substantial interest in the matters conveyed and not to burden plans with the cost of reporting and disclosing to an amorphous, undefined group of individuals who lack any such interest. Any other reading of the statute would reduce the amounts available to actual beneficiaries of plans for no statutory purpose.
 
 
 10
 Agency interpretations of ERISA's provisions are consistent with this conclusion. Department of Labor regulations defining the scope of coverage of employee pension benefit plans exclude from the term participant any employee with a service break of more than a year who has acquired no vested right to a benefit until the employee has returned to covered employment for an equivalent period. 29 C.F.R. Sec. 2510.3-3(d)(3)(i) (1984). Other regulations governing the imposition of premiums on pension plans by the Pension Benefit Guaranty Corporation exclude from the definition of participant any former employee who has no retained credited service under the plan or who has incurred a break in service greater than that specified in the plan. 29 C.F.R. Sec. 2610.2(a)(2) (1984).
 
 
 11
 We note finally that our reading of the statute accords with that adopted by other circuits. Weiss v. Sheet Metal Workers Local No. 544 Pension Trust, 719 F.2d 302 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 2347, 80 L.Ed.2d 821 (1984); Nugent v. Jesuit High School, 625 F.2d 1285 (5th Cir.1980).
 
 
 12
 It is clear in the instant case that Saladino is not a participant within the meaning of ERISA. The statutorily prescribed summary plan description which was provided to him before the litigation began and which was not contradicted by the various information provided thereafter made it amply clear that Saladino is not eligible for a pension.[3] Indeed, it is undisputed that he lacks any colorable claim to eligibility, a fact made apparent to him by the summary plan description in 1981.[4] He is not, therefore, a participant and is not entitled to attorney's fees under 29 U.S.C. Sec. 1132(g)(1).[5]
 
 
 13
 Appellant argues that a circularity is created by our definition of the term participant since only participants have a legally enforceable right to get a copy of a plan but a determination of whether one is a participant depends upon knowing the contents of the plan. Because we include within "participant" those persons with colorable claims to eligibility, the problem is more theoretical than real. For example, when Saladino first requested information from the Fund, his claim was colorable because his years of covered employment, without more, created a plausible possibility that he was eligible. The Fund responded with the summary plan description prepared pursuant to ERISA 29 U.S.C. Sec. 1022(b), and a letter referring to that summary and explaining why he was not eligible. Thereafter, Saladino never asserted any reasons refuting the arguments advanced by the Fund for his ineligibility or asserting eligibility on some other grounds. When he brought this litigation, therefore, he had no colorable claim to pension benefits. Nor did his claim become colorable once this litigation was brought and he obtained a complete copy of the relevant plans, for they merely confirmed the information previously conveyed by the Fund.
 
 
 14
 We see no inconsistency with the statutory purpose in the resultant denial of counsel fees. The Fund did not "stonewall" Saladino or ignore his requests for information. Rather, it provided him with an accurate summary plan description which negated his claim of eligibility. The Fund might well have been better advised to have provided copies of the complete plan in return for Saladino's payment of the cost of reproduction and thereby to have avoided this litigation, which, once brought, led inevitably to the production of the full plan, whether or not Saladino was entitled to a copy under Sec. 1024(b)(4). That is not, however, a reason to tax the beneficiaries of the Fund with Saladino's legal fees, since the litigation in no way altered the earlier documented demonstration of his ineligibility for benefits and his inability to qualify as a participant within the meaning of ERISA.
 
 
 15
 Affirmed.
 
 
 
 [1]
 That provision reads:
 Sec. 1022. Plan description and summary plan description.
 (a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan....
 (b) The plan description and summary plan description shall contain the following information: The name and type of administration of the plan; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator: names, titles and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title).
 
 
 [2]
 That provision reads:
 Sec. 1024. Filing and furnishing of information.
 Publication of summary plan, description and annual report to participants and beneficiaries of plan
 (b) Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:
 * * *
 (4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.
 
 
 [3]
 Even if eligible under the 1966 plan, Saladino may have no rights under ERISA in light of the date at which he left covered employment, see Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496 (9th Cir.1984), an issue which has not been argued and which we need not reach
 
 
 [4]
 Saladino argues that he has a colorable legal claim to eligibility despite his having left the industry before he reached the age of 65 because he departed involuntarily when his employer went out of business. He cites Lee v. Nesbitt, 453 F.2d 1309 (9th Cir.1972); Knauss v. Gorman, 583 F.2d 82 (3d Cir.1978); and Van Fossan v. International Brotherhood of Teamsters Local No. 710 Pension Fund, 649 F.2d 1243 (7th Cir.1981), for the proposition that it is arbitrary and capricious to deny benefits for failure to meet vesting requirements where the sole reason for this is an involuntary layoff. These cases, however, involved break-in-service provisions that operated to divest an employee of benefits he had already fully qualified for otherwise. Saladino, on the other hand, failed to satisfy a condition precedent to qualifying for such benefits. More importantly, in each of the cases cited by Saladino, the uncovered period was less than five years and the applicant had to demonstrate why he was unable to obtain covered employment during this period. Saladino has come forth with no evidence to explain why he failed to obtain covered employment for thirteen years after he lost his job
 
 
 [5]
 Saladino argues that our interpretation is "devastating to the basic principles of ERISA," Brief of Appellant at 22, since only "participants" may enforce many of the rights accorded by the legislation. His contention is that if the definition of participant is limited in the manner described in the text, pension funds may cut off judicial review under ERISA simply by asserting that an applicant is not a participant. No such consequence follows, of course, since the courts are obviously free to reexamine a litigant's status under a plan