Melvin STENKE, Plaintiff,

v.

QUANEX CORPORATION, and the Michigan Seamless Tube Division, Standard Tube Division, and Gulf States Tube Division, Individually, and the Quanex Corporation, and the Michigan Seamless Tube Division, Standard Tube Division and Gulf States Tube Division's Pension Plans for Hourly and Salaried Employees, Defendants.

No. 89–73068.

United States District Court,
E.D. Michigan, S.D.

Jan. 10, 1991.

Ann Thompson, Detroit, Mich., for plaintiff.

Paul Townsend, Jr., Nancy Niemela, Detroit, Mich., for defendants.

MEMORANDUM AND ORDER

COHN, District Judge.

I.

This case arises from a denial of benefits under a pension plan governed by Michigan contract law and an alleged violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* On September 20, 1989, plaintiff Melvin Stenke (Stenke) filed suit in Oakland County Circuit Court against Quanex Corporation (Quanex), the Michigan Seamless Tube Division of Quanex (Michigan Seamless), the Standard Tube Division of Quanex, the Gulf States Tube Division of Quanex, and the pension plans for both hourly and salaried employees of Quanex and each of the named divisions,[1] alleging breach of contract, equitable estoppel, and breach of fiduciary duty. Quanex removed the case to federal court on October 17, 1989.

Quanex now seeks summary judgment on the grounds that Stenke cannot show a breach of contract, that he cannot make out a claim for equitable estoppel based on the alleged misrepresentation of a Michigan Seamless employee, that his claim for equitable estoppel is time-barred, that he is not owed a fiduciary duty under ERISA, and that, even if he is owed a fiduciary duty, there has been no breach. Stenke responds that he relied to his detriment on the alleged misrepresentation and that Quanex representatives breached their fiduciary duty to him by refusing to honor his requests for pension plan information. Because the Court finds merit only in Stenke's ERISA claim, summary judgment is GRANTED in part and DENIED in part.[2]

II.

The following facts are undisputed. Stenke began working at Michigan Seamless on November 27, 1953. From that time until March 1, 1967, Stenke was employed in various positions within the bargaining unit represented by the United Steelworkers of America. During this period, he was covered by a pension agreement applicable to bargaining unit employees. Under the agreement, pension benefits would vest after a bargaining unit employee worked 15 continuous years with Michigan Seamless.

On March 1, 1967, Stenke accepted a promotion to foreman and thus became a part of management. From March 1, 1967 until his resignation on October 5, 1968, Stenke was covered by the pension plan for salaried employees. Under the plan, pension benefits would vest after the employee worked 15 continuous years with Michigan Seamless. Because he was concerned about the effect that his move from union to salary status would have on his pension, Stenke spoke to Mel House (House), his direct supervisor and the plant superintendent. In response to Stenke's inquiry about the effect of the move, House allegedly stated that "working till age 65, you can receive a pension." Stenke Dep. at 26. House did not elaborate on this statement, and Stenke sought no further explanation. House was not involved in any way with the administration of the pension fund.

After speaking to House on March 1, 1967, Stenke made no further inquiries regarding his pension fund benefits prior to resigning on October 5, 1968. Stenke made no subsequent inquiries about his pension benefits until 1983 when he wrote to Quanex regarding his eligibility for pension benefits. At that time, he was informed that he had resigned from employment with Michigan Seamless seven weeks be-

---

1. Because the defendants' interests coincide, they will be referred to collectively as Quanex unless otherwise noted.

2. After hearing oral argument on November 19, 1990, the Court granted Quanex one week to supplement its papers on the issue of Stenke's ERISA claim. The Court has reviewed those papers and will incorporate them into its discussion of Stenke's ERISA claim.

fore his pension benefits would have vested.

Stenke made no further inquiry until April 5, 1989, when he requested that Quanex provide him with copies of the pension plans in effect between 1953 and 1968 and a copy of the collective bargaining agreement effective in 1965. In response, Stenke received a letter dated April 11, 1989 from the Coordinator of Employee Services, Floy C. Alent (Alent), stating that he was not eligible for benefits and that copies of the requested documents could not be sent to him "as we do not have any extra copies of these documents." In August 1989, Stenke visited the offices of the Michigan Seamless division of Quanex in an effort to obtain the requested documents. After Alent again refused to provide him with the requested documents, Stenke spoke to Gary Allen (Allen), Manager of Human Resources. Allen gave Stenke a copy of the vesting provisions of the pension plan that went into effect after Stenke's resignation. Stenke did not receive a copy of any plan in effect during his employment with Michigan Seamless until December 14, 1989, after he had filed the complaint in this case.

### III.

### A.

■Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Quanex seeks summary judgment on several grounds. First, Quanex argues that Stenke cannot make out a claim for breach of contract because, under the terms of the applicable pension plans, Stenke is not entitled to benefits. Stenke's response to the motion for summary judgment does not contest Quanex's argument. Therefore, as to Stenke's breach of contract claim, summary judgment is GRANTED.

### B.

Next, Quanex argues that Stenke cannot make out a claim for equitable estoppel based on House's statement regarding pension benefits. Quanex asserts that Stenke's claim is barred by the statute of limitations and, even if it is not barred, Stenke cannot prove all of the elements of equitable estoppel. Because the Court agrees that Stenke can prove no set of facts constituting a claim for equitable estoppel, it need not reach the statute of limitations question.

■ The elements of equitable estoppel are: 1) a party, by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; 2) the other party justifiably relies on the facts; and 3) the other party is harmed by the reliance. *See 3 P.M., Inc. v. Basic Four Corp.,* 591 F.Supp. 1350, 1365 (E.D. Mich.1984). Quanex contends both that House's statement was too vague and incomplete to be a misrepresentation and that Stenke's reliance was not justifiable. In effect, the two arguments are one because the vagueness of House's statement and the fact that House was not discussing the vesting provisions of the pension plan when he made the statement illustrate the unreasonableness of Stenke's reliance.

■ A reasonable person would have sought out someone who was involved in administering the pension plan and asked specifically about the pension plan's vesting provisions before deciding to resign. At a minimum, a reasonable person would have obtained confirmation of House's statement prior to resignation. Indeed, Stenke's more recent actions are far more reasonable than those taken in 1967 and 1968. Stenke refused to accept Quanex's 1983 response stating that he was not eligible for pension benefits. He asked again. If he had asked more nearly the right question, of the right person, at a time closer to his resignation and received the same answer, he could make out an equitable estoppel claim. However, because it is axiomatic that reliance must be reason-

able before it constitutes grounds for equitable estoppel, see, e.g., 3 P.M., Inc., 591 F.Supp. at 1365, Stenke's claim is DISMISSED.

### C.

Finally, Quanex argues that Stenke cannot make out a claim for breach of fiduciary duty under ERISA for failure to respond to his requests for documents. The relevant ERISA disclosure provision reads as follows:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary [of Labor] may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

29 U.S.C. § 1024(b)(4). Any administrator who fails or refuses to comply with a request for information by a

> "participant or beneficiary ... [unless the refusal results from matters beyond the administrator's control] ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

29 U.S.C. § 1132(c)(1)(B). In its initial papers in support of its motion for summary judgment, Quanex contended that Stenke was not owed this type of fiduciary duty because he was not eligible for pension benefits and, even if he was owed such a duty, it was fulfilled. In its supplemental papers, Quanex has refined its first argument and backed away from its second argument.

■ Individuals seeking documents from a plan administrator need not be eligible for participation in the plan, rather they need only have a colorable claim to benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80, 97 (1989). Quanex argues that Stenke had no colorable claim to benefits because he concedes that he was not vested in the pension plan at issue. However, this argument ignores Stenke's assertion that, whether or not he was covered by the terms of the plan, he was entitled to benefits because of misrepresentations made to him by Quanex personnel.

In *Bruch*, the United States Supreme Court took the position, expressed in *Saladino v. ILGWU Nat'l Retirement Fund*, 754 F.2d 473, 476 (2d Cir.1985), that a former employee with a colorable claim to vested benefits is a participant within the meaning of 29 U.S.C. § 1132(c)(1)(B). Therefore, in order to amplify the meaning of the term "colorable claim," the Court turns to the *Saladino* decision. The Court of Appeals for the Second Circuit held that the plaintiff, Saladino, had no colorable claim to pension benefits because, when he first requested information from the pension fund, he received a summary plan description and a letter explaining why he was not eligible. Any colorable claim to benefits disappeared after that response. *Id.* at 477. Saladino never asserted any reasons refuting the explanation or asserting eligibility on other grounds. Moreover, the Court of Appeals concluded that the pension fund did not "stonewall" Saladino or ignore his requests for information. *Id.* at 477–78.

■ Saladino's situation differs markedly from Stenke's. Unlike Saladino, Stenke asserted his eligibility on other grounds. He had a colorable claim when he began this litigation. In addition, Saladino received much better treatment from the pension fund. The contrast is evident from the artful language used by Quanex in its papers styled Brief in Support of Defendants' Motion for Summary Judgment: "Fifteen years after Plaintiff left the employ of Defendant, he requested information, *which was promptly provided to him.* Six years later, he requested in-

formation, *and he received a prompt and accurate response."* Brief in Support at 10 (emphasis added). Rather than providing the information requested, or any useful information at all, Quanex gave Stenke a "prompt and accurate response." Stenke clearly was being stonewalled. This conclusion is confirmed by the language of Alent's letter dated April 11, 1989. A refusal to provide copies of documents on the ground that "we do not have any extra copies" of them, particularly in light of the fact that ERISA provides that a participant or beneficiary can be charged for the cost of making copies, is the essence of stonewalling.

Quanex relies chiefly on two cases in support of its position that Stenke was not a participant to whom the pension plan was required to provide information, *Nugent v. Jesuit High School of New Orleans,* 625 F.2d 1285 (5th Cir.1980), and *Weiss v. Sheet Metal Workers Local No. 544 Pension Trust,* 719 F.2d 302 (9th Cir.1983). However, neither case conflicts with the Court's decision here or the holdings of *Saladino* and *Bruch.* Both involved plaintiffs who brought claims solely for nondisclosure, without accompanying claims of entitlement to benefits. Obviously, the plaintiffs in those cases presented no colorable claims to benefits that would qualify them as participants with a right to pension plan information. As a result, the Court rejects Quanex's arguments on this issue. Summary judgment is DENIED.

### IV.

It is Stenke's position that he is entitled to the statutory penalty of $100 per day from the date he was first refused pension plan information, April 11, 1989, to the date he finally received the information requested, December 14, 1989. In its supplemental papers, Quanex contends that the Court should utilize its discretion and decline to award the statutory penalty because its failure to furnish plan information did not prejudice Stenke in any way. The Court finds the cases cited by Quanex, in particular *Pollock v. Castrovinci,* 476 F.Supp. 606 (S.D.N.Y.1979), *aff'd,* 622 F.2d 575 (2d Cir.1980), to be persuasive.

Where, as in *Pollock,* the rights of the plaintiff have not been prejudiced and the Court finds that the plaintiff has not acted entirely in good faith, the statutory penalty is not warranted. A similar result will obtain here. The Court will not assess the statutory penalty because Stenke suffered no prejudice to his rights. However, because it also believes that Quanex's intransigence is at least partially responsible for the filing of this lawsuit, the Court, in its discretion, will assess a penalty of $1 per day for the period from April 11, 1989 to December 14, 1989. Quite simply, if Alent and Allen had taken the time to address Stenke's concerns, they might have negated his desire to file this lawsuit.

The parties will submit a form of judgment for the Court's entry in conformity with this order.

SO ORDERED.