John H. **BOUTEILLER**, Plaintiff,

. v.

**VULCAN IRON WORKS, INC.,** as Plan Administrator; Vulcan Iron Works, Inc.'s Employees Pension Plan and Trust; Vulcan Iron Works, Inc.'s Employees Profit Sharing Plan and Trust; James R. Edward, as Trustee and as Plan Administrator of the Pension and Profit Sharing Plans; and Sheldon D. Eizen, as Plan Administrator, Defendants.

No. 91–76363.

United States District Court,
E.D. Michigan, S.D.

Oct. 5, 1993.

Gary M. Lambert, Detroit, MI, for plaintiff.

Anthony A. Asher, Southfield, MI, for defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff filed the complaint in this matter November 22, 1991. Defendant answered the complaint April 30, 1992. Discovery was set to close in this case January 19, 1993.[1] On January 13, 1993, defendant filed the instant motion for summary judgment. Plaintiff responded February 2, 1993. On March 5, 1993, defendant filed a reply. Defendant filed a second motion for summary judgment February 1, 1993, seeking dismissal of defendant Eizen. Plaintiff responded to this motion August 18, 1993.[2] After taking the deposition of defendants Edward and Eizen, plaintiff filed a supplemental response August 18, 1993. Defendant replied to the supplemental response September 14, 1993. On September 3, 1993, plaintiff filed a motion to amend the complaint. Defendant responded to this motion September 14, 1993. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Jan. 1, 1992), no oral argument was heard.

### I. Facts.

From February 1974 until September 18, 1987, plaintiff, John Bouteiller, was employed by defendant Vulcan Iron Works, Inc. ("Vulcan") as a foreman/superintendent. As an employee of defendant, plaintiff was a participant in the pension and the profit sharing plans of Vulcan. These plans are tax qualified under sections 401(a) and 501(a) of the Internal Revenue Code and were administered pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001, *et seq.*

In June 1988, plaintiff received a lump sum distribution from his employee pension trust fund in an amount of $13,887.00 and a lump sum distribution from his employee profit sharing plan in an amount of $106,238.41. On June 27, 1988, prior to receiving these distribution payments, plaintiff met with defendant Eizen. Eizen gave plaintiff two sets of documents each containing a cover letter addressed to plaintiff and dated June 17, 1988, an election as to form of benefit, a withholding election on benefit distributions, and a five-page document entitled "Special Tax Rules for Retirement Plan Distributions."[3]

Defendant Eizen told plaintiff that in order to receive the distributions, plaintiff and plaintiff's spouse would have to sign the election forms in front of a notary. Plaintiff and his spouse immediately took the document packages to their banker. On the same day, plaintiff returned to Eizen's office with notarized election forms.

In July 1988, plaintiff rolled substantially all of the proceeds from these distributions into an Individual Retirement Account ("IRA"). By investing in an IRA within sixty days of receiving the distributions, plaintiff avoided the application of income taxes to those sums. However, plaintiff thereafter removed money from the IRA to purchase real estate. The amount removed from the IRA then became subject to income tax.

Plaintiff and his spouse mistakenly believed that the money used to purchase the real estate would not be taxed because it had been rolled through the IRA. Plaintiff

---

1. This date was extended to allow plaintiff an opportunity to take the depositions of defendants Edwards and Eizen. The court allowed plaintiff to file a supplemental response once these depositions were taken, and delayed rendering a decision on defendants' motion for summary judgment.

2. Because the court will dismiss the complaint, this motion is moot.

3. Plaintiff, through his motion to amend the complaint, seeks to change the facts set forth in his affidavit dated February 1, 1993. Plaintiff now claims that he did not receive any documents except "two blank forms" requiring the signatures of him and his wife. Affidavit dated August 20, 1993. See discussion *infra.*

claims that the assessment of taxes in an amount of $33,000.00 is attributable to defendants' breaching their fiduciary duty to plaintiff.

## II. Plaintiff's Motion to Amend the Complaint as to Counts I and II.

■ The grant or denial of a motion to amend the complaint is within the sound discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir.1973). Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). If the underlying facts or circumstances alleged in the amendment may be a proper subject of relief, the plaintiff ought to be afforded an opportunity to test his claim on the merits. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

■ In the original complaint, plaintiff alleged in Counts I and II that Edwards and Eizen caused plaintiff to sign a release agreement but failed to give notice and disclose of the tax incidence, as required by I.R.C. § 402(f). In opposing defendants' motion for summary judgment, plaintiff submitted an affidavit wherein he stated *inter alia*, that, prior to signing the release agreement, he received a "document package" containing

a June 17, 1988 cover letter addressed to [him], an election as to benefit, withholding election on benefit distributions and special tax rules for retirement plan distributions.

Affidavit of John Bouteiller dated February 1, 1993. This affidavit provided the factual basis of Counts I and II: that plaintiff had not been counseled by Eizen regarding the contents of the document package; that plaintiff was pressured into not reading the documents because he was told that he could not receive his distribution until he had the documents signed and notarized; and that plaintiff was not provided with a copy of the documents subsequent to signing them because the defendants' copier was not operating.

Plaintiff now wishes to change that version of events and to amend Counts I and II. Plaintiff claims that

[u]pon review of the deposition of Eizen, Plaintiff's [sic] then disclosed to Plaintiff's counsel that an entire document package was *not* handed to them for them to have signed, witnessed and notarized out of the offices of Sheldon Eizen, but were merely given the signatory pages that he withdrew from the package and instructed them to go have the signatory pages signed, witnessed and return same, which they did the same day. Eizen then reinserted the signatory pages back into the document, then informed them that his copy machine was malfunctioning and that they would subsequently receive a full copy of their document package, apparently through Edwards.... Therefore it is Plaintiff's allegations that they never received any Notice of Special Tax Rules or were they ever informed of their rights of alternative modes of distribution, such as installment payments over 10 years, straight life annuity,....

Plaintiff's Motion to Amend at 5–6. Thus, between February 1, 1993 and August 20, 1993, plaintiff's recollection of events has changed substantially. And now, almost two years after the complaint was originally filed, plaintiff desires to make the defendants' failure to provide the document package the factual premise of his claim. Plaintiff claims that the reason for the change in his factual allegations is

[t]hat it was Plaintiff's Complaint, in the way it was drafted, that gave rise to the reading and interpretation that Plaintiff's had received an entire package of documents pursuant to a meeting in Sheldon Eizen's offices which contained Notice of Special Tax Rules required by [I.R.C. §] 402(f), Mode of Distribution forms attached containing the various means and elections for receiving a terminated distribution along with a spousal consent form to the waiver of the qualified joint and survivor annuity.

Plaintiff's Motion to Amend at 4–5. This explanation simply is not true. Nothing in the language of the complaint indicates whether or not plaintiff received a document package. Rather, these facts were only revealed on February 1, 1993, through the

specifically detailed affidavit of plaintiff himself. Plaintiff is not entitled, two years into litigation, to completely change his version of the facts that allegedly underlie his claims.

Thus, the court finds that the facts now relied upon by plaintiff are not a proper subject of relief at this late stage in the litigation. The undue delay is extreme. The reasons given for the amendment belie the good faith of the plaintiff. The defendants would be caused undue prejudice in having to defend against the contradictory factual scenarios of plaintiff where discovery is closed and numerous dispositive pleadings have been filed. Furthermore, regardless of which factual scenario is alleged, the court finds that defendants are entitled to judgment as a matter of law.[4] For all the foregoing reasons, the court shall deny plaintiff's motion to amend the complaint.

### III. Analysis of Counts I and II.

The complaint alleges that defendants Eizen and Edwards failed "to give notice and disclose, as required by [I.R.C. §] 402(f), the tax incidence of such a distribution." In Counts I and II, plaintiff alleges that such failure constitutes a breach of defendants' fiduciary duty to plaintiff under 29 U.S.C. §§ 1104, 1109, and 1132(a)(3).

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984)

(quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for

---

**4.** Furthermore, the court finds the amendment to be unnecessary. Even if the court were to accept plaintiff's "updated" version of the facts, the complaint is pleaded with sufficient generality that it does not need to be amended to reflect this scenario.

summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### B. Counts I and II: Plaintiff's Claims Under 29 U.S.C. § 1109

■ Even assuming defendants breached their respective fiduciary duties to plaintiff, plaintiff has failed to state a cognizable claim under section 1109.[5] Section 1109 provides *the plan* with a cause of action for breach of fiduciary duty.

### § 1109. Liability for breach of fiduciary duty

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good *to such plan any losses to the plan* resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added). Section 1109 clearly provides a remedy only *to the plan* for losses *to the plan.* This section provides no cause of action to plan beneficiaries for a plan administrator's breach of fiduciary duty. In fact, the Supreme Court has stated in no uncertain terms that section 1109 does not provide a remedy for plan beneficiaries claiming to have been injured by a plan administrator's breach of fiduciary duty. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 138–44, 105 S.Ct. 3085, 3088–91, 87 L.Ed.2d 96 (1985).

### C. Counts I and II: Plaintiff's Claims Under 29 U.S.C. §§ 1104 and 1132(a)(3)

■ Plaintiff claims that the defendants' alleged breach of their respective fiduciary duties to plaintiff entitles plaintiff to relief under section 1132(a)(3) of ERISA. For the following reasons, the court finds that section 1132(a)(3) does not provide relief for plaintiff's injuries.

The United States Court of Appeals for the Sixth Circuit has held that a beneficiary of an ERISA plan may bring an action under section 1132(a)(3) for money damages arising from a fiduciary's breach of a *contractual* duty. *Warren v. Society Nat'l Bank,* 905 F.2d 975, 981 (6th Cir.1990). Section 1132(a)(3) provides:

**(a) Persons empowered to bring a civil action.** A civil action may be brought—

\*    \*    \*    \*    \*    \*

(3) by a participant, beneficiary, or fiduciary ... (B) to obtain other appropriate *equitable* relief....

29 U.S.C. § 1132(a)(3) (emphasis added). The Sixth Circuit held in *Warren* that "other appropriate equitable relief" includes the provision of money damages where the claim arises out of the fiduciary's breach of a contractual provision. *Warren,* 905 F.2d at 981.

The facts of *Warren,* however, are distinguishable from those in this case in two respects. In *Warren,* the plaintiff "alleged that, either through negligence or in order to earn additional fees as trustee," the ERISA fiduciary failed to distribute all of his plan assets during a single calendar year as per the plaintiff's written request. *Id.* at 976. As a result of the defendant's actions, the plaintiff was held accountable to the Internal Revenue Service ("IRS") for income taxes.

The first distinction between this case and *Warren,* is that the *Warren* plaintiff brought suit under the terms of the plan, that is, for

---

**5.** Section 1104 merely sets forth the "prudent man standard of care," by which a fiduciary's actions are to be judged. 29 U.S.C. § 1104.

the fiduciary's breach of a contractual duty. The ERISA contract in *Warren* specifically provided that a plan beneficiary could "reduce, or defer entirely, the tax due on [a] distribution through ... the rollover of all or a portion of the distribution to an IRA ... within 60 days" of receipt of the distribution. *Id.* at 977. The Sixth Circuit specifically held that because the facts of the case provided defendant with a claim for breach of the fiduciary's *contractual* duty, the plaintiff was entitled to recover money damages.

In the instant case, plaintiff points to no provisions within the Vulcan Iron Works' ERISA or profit sharing plans requiring the fiduciary to provide the plan beneficiaries with information regarding the tax consequences of the various types of distributions. Rather, plaintiff's claim is based on the extracontractual duty imposed upon the fiduciary by the IRS. Thus, because the contract between the parties did not create the duty claimed to have been breached, plaintiff's claim is extracontractual rather than contractual. In *Warren*, the Sixth Circuit noted that other courts of appeals have held that "extracontractual compensatory damages are not recoverable under section [1132(a)(3)]." *Id.* at 979 (citing *United Steelworkers of America v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir.1988), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 824 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir.1986); *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302 (9th Cir.1986). It also cited *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689 (6th Cir.1989), *cert. denied*, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990), wherein the Sixth Circuit stated in *dicta*, without identifying any particular section of ERISA, that "[t]here can be no extracontractual recovery in the context of an ERISA plan." The Sixth Circuit did not question these holdings, but rather went on to distinguish the facts of *Warren* by the contractual, as opposed to extracontractual, nature of the claim.

The second factual distinction between this case and the *Warren* case, is that the defendant in *Warren* had something to gain by its breach, that is, additional fees. Thus, the plaintiff in *Warren* may have had a valid claim in restitution. In this case, the defendants had nothing to gain from their alleged breach. Thus, the plaintiff here has no claim for restitution.

The language of section 1132(a)(3) specifically provides only for "other equitable relief." The section makes no provision for money damages *per se*. According to the Ninth Circuit, in a holding affirmed by the United States Supreme Court, the only way a district court can fashion an equitable remedy under ERISA to provide a monetary recovery for a breach of fiduciary duty is to order restitution. *Mertens v. Hewitt Assoc.*, 948 F.2d 607, 612 (9th Cir.), *aff'd,* — U.S. —, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Where it is not alleged that a defendant received anything other than compensation for services as an employee of the ERISA plan, there can be no claim for restitution because there is nothing to recover from the defendant. *Id.* In the case at bar, the defendants received no compensation or unjust enrichment by way of their alleged failure to properly provide notice and disclose to the plaintiff. It is not possible, therefore, for the plaintiff in this case to frame a claim for restitution in terms of the recovery of plan assets wrongfully obtained by the defendants.

Thus, in light of the case law on this issue, the court finds that plaintiff is not entitled to recover money damages under section 1132(a)(3) for his claim of extracontractual breach by the fiduciary. Therefore, defendants are entitled to judgment as a matter of law.

■ Furthermore, even if section 1132(a)(3) did provide plaintiff with a cause of action, plaintiff has failed to provide evidence which would tend to establish either that the defendants breached their fiduciary duty or caused plaintiff's damages. Plaintiff seeks as a remedy an award of the $33,000 in income taxes that he had to pay as a result of defendants' alleged fiduciary breach. Plaintiff claims in Counts I and II that defendants

"failed to give notice and disclose, as required by [I.R.C. §] 402(f), the tax incidence of such a distribution." Section 402(f) provides

**(f) Written explanation to recipients of distributions eligible for rollover treatment.**

**(1) In general.** The plan administrator of any plan shall, when making an eligible rollover distribution, provide a written explanation to the recipient—

(A) of the provisions under which such distribution will not be subject to tax if transferred to an eligible retirement plan within 60 days after the date on which the recipient received the distribution, and (B) if applicable, the provisions of subsections (a)(2) and (e) of this section.

26 U.S.C. § 402(f). Subsection (a)(2) was deleted. Subsection (e) of section 402 concerns lump sum distributions.

Plaintiff admits that, prior to receiving his distribution payments, defendant Eizen gave plaintiff two sets of documents each containing a cover letter dated June 17, 1988, and addressed to plaintiff, an election as to form of benefit, a withholding election on benefit distributions and a five-page document entitled "Special Tax Rules for Retirement Plan Distributions." The complaint does not challenge the adequacy of the information in those documents. Rather, plaintiff's claim is that he was not properly counseled on and provided with copies of, that information.[6]

Plaintiff admits that he had the tax consequence information in his possession prior to signing the election forms. In fact, plaintiff carried the information with him to the bank where he had an officer notarize his forms. Plaintiff argues that because he was told that his distribution checks would not be issued until he had signed the election forms, that he thereby was pressured into signing the forms quickly and did not have sufficient time to read over the material.

Defendant has a statutory duty under 26 U.S.C. § 402(f) to provide the tax consequence information to plan beneficiaries. It does not have a duty to ensure that beneficiaries actually read the material and act upon it. It appears from the pleadings that plaintiff simply did not take the time to read over the material because he was eager to receive the money. Without any factual allegation of duress, plaintiff's assertion that he did not have ample time to read the material is irrelevant.

Plaintiff's second argument is that defendants failed to inform him that once the distribution funds were invested in an IRA, they could not be removed to purchase real estate without incurring income tax liability.[7] Section 402(f) does not require that a plan administrator inform a distribution recipient of every possible investment option and tax consequence. This being the case, the court finds that even assuming that defendants breached their fiduciary duty in the first instance by not giving plaintiff ample time to read over the information provided, there is no causation between the breach and plaintiff's damages. Plaintiff's damages arose not from the fact that he did not know that he must invest in an IRA within two months of receiving the distribution, but rather because he did not know the consequences of thereafter removing that money from the IRA and investing it in real estate.

Thus, the court finds that section 1132(a)(3) does not provide relief for extra-contractual damages such as the plaintiff allegedly suffered. Even if it did, the court finds that there is no genuine issue of material fact as to whether defendants violated the prudent man standard of care set forth in section 1104, or whether any such violation

---

**6.** Plaintiff's own contradictory affidavit is not sufficient to create a genuine issue of material fact as to whether he did or did not receive this document package. See footnote 3 and discussion *supra.*

**7.** Plaintiff also makes a vague claim that "[i]n my conversations with [defendants], that each of them represented that a permissible investment for my retirement plan rollover would be in real estate were I to roll over my benefit to an [IRA]." Plaintiff's Affidavit at Paragraph 9, Exhibit A to Plaintiff's Response. Plaintiff does not specify what is meant by "permissible." In his deposition testimony, however, plaintiff explained that defendants had *not* told him that he could invest in real estate without tax consequences. Deposition of John Bouteiller at 101–02.

caused plaintiff's damages. Defendants therefore are entitled to judgment as a matter of law as to Counts I and II.

## IV. Analysis of Counts III through X.

■ In Counts III through X, plaintiff claims that defendants failed to timely provide him with copies of the pension and profit sharing plans and that he therefore is entitled to damages under 29 U.S.C. § 1132(c). Section 1132(c) provides:

**(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form.** (1) Any administrator who ... (B) fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request *may in the court's discretion* be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

*Id.* (emphasis added). Defendants dispute plaintiff's claim that they did not send him the requested information. However, assuming as true all of plaintiff's allegations, plaintiff has made no showing of prejudice resulting from his not receiving such information.

■ Even where it is undisputed that a plan administrator has failed or refused to provide requested information, damages under section 1132(c) are not automatically awarded. *Lesman v. Ransburg Corp.*, 719 F.Supp. 619, 621 (W.D.Mich.1989). Determination of liability and the amount of such is in the court's discretion. *Id.* at 622. The statutory award provided in section 1132(c) is punitive and designed to induce or compel disclosure of information required by ERISA. *Id.* Although prejudice is not a statutorily imposed prerequisite for the imposition by a court of non-disclosure penalties, courts may consider detrimental reliance or prejudice before imposing penalties under the section. *Id.*

In fact, courts generally do not favor imposing a penalty where a plaintiff makes no showing of prejudice. *See Paris v. Profit Sharing Plan, et al.*, 637 F.2d 357, 362 (5th Cir.1981) (with no showing of prejudice, it could not be found that district court abused its discretion in denying damage award under section 1132(c)); *Stenke v. Quanex Corp.*, 759 F.Supp. 1244, 1248 (E.D.Mich.1991); *Lesman*, 719 F.Supp. at 621. This court cannot justify the imposition of any penalties where the plaintiff makes no attempt to show any prejudice.

## V. Count XI.

■ In Count XI, plaintiff claims that defendants failed to invest plaintiff's account balances during the period between plaintiff's termination and the distribution of the balances. Plaintiff points to no statutory, common law, or contractual duty of defendants to invest funds during this interim period.

In fact, Article VII of Vulcan's Profit Sharing Plan, entitled "Retirement," indicates that, in the case of a lump sum payment election, no investment of the monies shall be made. Article VII, section 7.1, states as follows:

7.1: *Form of Benefits*:

A. When a Participant retires ... the Administrator shall direct the Trustee to separate the Participant's Account after allocating to it its share of any contribution and forfeitures, revaluation of, his Account. The Participant's segregated Account shall then constitute a separate trust fund for him or his Beneficiary. The Trustee shall distribute the Account Balance in accordance with any one of the following means as a Participant selects:

(1) A lump sum cash payment;

(2) In substantially equal annual installments over a period not to exceed ten years.

B. *In the case of installment payments,* the Trustee shall separate the Participant's Account and shall invest it in an interest bearing account. No such segre-

gated Account shall share in any other of the allocations contained in Article VI.

Vulcan's Profit Sharing Plan and Trust at 17–18 (emphasis added). The plan clearly delineates a distinction between receiving a lump sum distribution and receiving such distribution in annual installments; that is, when paid in annual installments, the individual's fund amount shall be invested in an interest bearing account. When paid as a lump sum, there is no provision calling for the amount to be invested.

A careful review of Vulcan's Pension Trust Plan reveals to the court no duty of the plan administrator to invest either lump sum or extended payment distributions. Thus, the court finds that the plan administrator had no duty to invest plaintiff's account balances in the interim period between termination and distribution.

For the foregoing reasons, the court finds that defendants are entitled to judgment as a matter of law on all counts of the complaint. Therefore, defendant's motion for summary judgment shall be granted.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion to amend the complaint is **DENIED.**

It is further **ORDERED** that defendants' motion for summary judgment is hereby **GRANTED.**

It is further **ORDERED** that defendants' second motion for summary judgment as to defendant Sheldon Eizen is hereby **MOOT.**

**SO ORDERED.**