**Paulette EVANS, Plaintiff,**

v.

**AMERITECH an assumed name for the Michigan Bell Telephone Company a Michigan corporation and Ameritech Disability Service Center as successor in interest to the Metropolitan Life Insurance Company, jointly and severally, Defendants.**

No. CIV. A. 98–40039.

United States District Court,
E.D. Michigan,
Southern Division.

July 21, 1998.

David L. Ravid, James M. Brady, Ravid Assoc., Southfield, MI, for Plaintiff.

Albert Calille, Ameritech, Detroit, MI, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This is an ERISA action. Plaintiff Paulette Evans claims that her monthly long-term disability benefits are being improperly reduced by the amount she is receiving as a monthly disability pension benefit.

Presently before this court is a motion for summary judgment filed by defendant Ameritech and Ameritech Disability Service Center (collectively "Ameritech"). This court heard oral argument on the motion on July 8, 1998. Upon consideration of the parties' written submissions, the arguments advanced at the hearing, the record and all relevant authorities, this court will grant defendants' motion for the reasons set forth below.

### FACTS

Plaintiff began her employment with Michigan Bell Telephone Company (now known as "Ameritech") on or about November 7, 1966. In 1992, work-related hand and arm injuries rendered plaintiff disabled from work and plaintiff began receiving benefits under Ameritech's short-term Sickness and Accident Disability Plan ("SADP"). On April 27, 1993, after plaintiff's 52 weeks of SADP benefits expired, plaintiff began receiving benefits under Ameritech's Long Term Disability Plan

("LTD Plan"),[1] which was then being administered by Metropolitan Life Insurance Company ("Metropolitan").[2]

Plaintiff received notification that effective January 1, 1998, the LTD Plan would no longer be administered by Metropolitan, but would instead be administered by Sedgwick James at the Ameritech Disability Service Center ("ADSC"). After taking over administration of the LTD Plan, ADSC began to evaluate plaintiff's claim for LTD benefits. The ADSC discovered that plaintiff was receiving a monthly disability pension benefit of $780.96. The ADSC determined that pursuant to the terms of the LTD Plan, this monthly disability pension benefit should have been utilized to offset the amount of plaintiff's LTD benefit.[3] On April 3, 1997, the ADSC sent plaintiff a letter which stated as follows:

> ...LTD benefits have been overpaid at the monthly rate of $780.96 between 4/27/93 and 4/1/97. Since this overpayment appears to be a mistake made by the prior LTD administrator, the ADSC will waive your claim overpayment which has accumulated to the amount of $36,809.25. However, the ADSC will adjust your claim to reflect the receipt of [pension benefits] and future [LTD] benefits will be payable in the amount of 404.38 monthly to you in accordance with the Ameritech LTD Policy.

On December 22, 1997, plaintiff instituted this lawsuit against Ameritech and the ADSC alleging that in 1993, Michigan Bell promised not to off-set her LTD benefits with her disability pension benefits. Plaintiff alleges that the recent decision to offset her LTD benefits with her disability pension benefits constitutes a breach of contract (Count I), misrepresentation (Count II) and fraud (Count III).

In an opinion and order dated April 16, 1998, this court dismissed plaintiff's claims of misrepresentation (Count II) and fraud (Count III), finding these claims to be preempted. This court declined to dismiss the breach of contract claim (Count I), however, finding that claim to be a superseding claim under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B).

### Standards of Review

In their present motion, defendants seek summary judgment on plaintiff's ERISA claim. Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.

---

1. The LTD Plan is an "employee benefit plan" as that term is defined by the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

2. That same year, she also settled a workers compensation claim against Michigan Bell.

3. In pertinent part, the LTD Plan provides:
   If an Eligible Employee is disabled for a period beyond the Waiting Period as a result of Sickness or Injury, this plan shall provide, for a period during which benefits are provided by this plan, an amount of monthly benefit which when added to amounts paid or payable from the following sources equals 50 percent of Base Pay:

(a) as a Disability Insurance Benefit or an Old Age Insurance Benefit under the Social Security Act (Primary Benefit Only) ...,
(b) as payments under any Workers' Compensation Act or similar legislation;
(c) as payments under any other State or Federal disability benefit law, except Veteran's Benefits;
(d) as benefits under the Ameritech Sickness and Accident Disability Plan (SADBP) or pension payments under the Ameritech Pension Plan ...
If the sum of (a), (b), (c), and (d) exceeds 50% of Base Pay, then no amount of benefit is payable under this plan.

1994) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n., Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.1993), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton,* 24 F.3d 823, 826–27 (6th Cir.1994).

### *Reviewing The LTD Plan Administrator's Decision*

■ The purpose of this lawsuit is to review the ADSC's decision to reduce plaintiff's LTD benefit by the amount she is receiving as a disability pension benefit. Such decision is subject to *de novo* review unless the LTD Plan confers upon the Plan administrator the discretion to make factual determinations and to construe the terms of the documents. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (emphasis added). If the Plan expressly grants the Plan administrator

or fiduciary the authority to determine eligibility for benefits or to construe the plan's terms, the *de novo* standard of review is replaced by an "arbitrary and capricious" standard. *Perry v. Simplicity Engineering,* 900 F.2d 963, 967 (6th Cir.1990).

In this instance, the LTD Plan grants Ameritech Employees' Benefit Committee "full and discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with Plan terms." Therefore, the arbitrary and capricious standard applies. Indeed, plaintiff presents no persuasive argument and no authority as to why this standard should not apply.

### *Whether the LTD Administrator's Decision To Offset Plaintiff's LTD Benefits With Her Pension Benefits Was Arbitrary and Capricious*

■ Having determined that the appropriate standard of review is arbitrary and capricious, the pertinent inquiry here is whether the administrator's decision to offset plaintiff's LTD benefits with her disability pension benefits was arbitrary and capricious. Defendants insist that no reasonable juror could find such decision arbitrary and capricious, and that defendants are thus entitled to summary judgment as a matter of law. Plaintiff, on the other hand, maintains that a reasonable juror could find the decision to offset her LTD benefits with her pension benefits arbitrary and capricious and plaintiff urges this court to deny defendants' motion for summary judgment. Plaintiff insists that the decision to offset such benefits nullifies a promise made to her by Michigan Bell in 1993.

In 1993, plaintiff filed a workers compensation claim against Michigan Bell. That claim was settled, or to say it another way, "redeemed" for $4,500. Plaintiff claims that one of the terms of the settlement agreement was that her disability pension benefit would not be offset by the amount of her LTD benefit.

Plaintiff proffers several documents which she believes evidence a promise by Michigan Bell not to offset her LTD benefits by the amount of her disability pension benefits.

For the most part, the documents constitute the correspondence between her attorney and Michigan Bell's attorney which preceded the settlement of her workers compensation claim. First, there is a letter from Michigan Bell's attorney to plaintiff's attorney dated May 25, 1993, which reads as follows:

> We herewith enclose information regarding the plaintiff's disability pension and long-term disability benefits. We believe you will find this information self-explanatory.
>
> For your information, the Michigan Bell pension plan provides for a dollar for dollar offset against a disability pension for any worker's compensation benefits the plaintiff may receive by way of a decision or a redemption. There is of course also coordination for any long-term disability benefits.
>
> Michigan Bell may agree to waive the disability pension offset if a settlement in this case can be negotiated.
>
> Please submit a settlement demand for our client's consideration.

The above letter was followed by a letter dated June 2, 1993 from plaintiff's attorney to Michigan Bell's attorney which reads in relevant part:

> At the present time there does not appear to be much more than $50.00 per month in uncoordinated benefits owing. However, I must know the duration of the pension and LTD benefits before I can formulate a demand. When are these benefits expected to terminate?

A letter dated August 11, 1993 from Michigan Bell's attorney to plaintiff's attorney is the next item of correspondence in the record. That letter reads:

> Subsequent to our telephone conversation of August 3, 1993, we had an opportunity to review this case with our client [Michigan Bell]. We have been authorized to advise you that if your client agrees to accept our offer to settle this matter for the sum of $4,500, Michigan Bell will agree to waive the disability pension offset.
>
> Secondly, we have also been authorized to advise you that if your client accepts our offer of settlement, the net proceeds of the settlement may be allocated to past, present and future medical expenses so as to avoid any effect upon her eligibility for LTD benefits. Under the current benefit plan, Ms. Evans [plaintiff] could continue to receive LTD benefits under age 65. To qualify for these benefits, she must establish that for the first year of disability, she is unable to return to her former job. After the first year, to establish eligibility, she must be unable to return to any employment for which she is qualified by reason of her training or experience (i.e., the social security definition of disability).
>
> Ms. Evans must continue to meet the requirements of the LTD plan. This determination is made by the LTD carrier, not by the Michigan Bell Telephone Company.
>
> Finally, the monthly benefit amount received under the LTD program could be reduced if Ms. Evans were to qualify for social security disability benefits.
>
> We trust we have addressed your client's concerns; however, should you have any additional questions or require any additional information, please contact us.
>
> We trust that when you have reviewed this matter with your client, you will advise whether we may forward redemption papers.

The record further contains a letter dated July 15, 1993 from Michigan Bell's attorney to plaintiff's attorney which provides:

> Our client [Michigan Bell] has authorized the settlement of this case for the sum of $4,500 together with a waiver of the pension offset and an agreement that the redemption would have no effect upon the plaintiff's LTD benefits.
>
> Please review with your client and advise whether we may forward redemption papers.

Finally, there is a letter from plaintiff's counsel to defendant's counsel dated August 30, 1993 which states:

> This will confirm this matter is scheduled for trial on September 8, 1993. My client has agreed to settle her case for $4,500 with the understanding that as long as she remains disabled and qualified that she will continue to receive sickness and accident

benefits through the age of 65 years. Please bring the appropriate redemption papers to the trial date.[4]

In addition to the above-correspondence, plaintiff also offers the transcript of a September 8, 1993 hearing before the Honorable David Nowinski, an Administrative Law Judge of the Bureau of Workers' Disability Compensation. At that hearing, the settlement of plaintiff's worker's compensation claim was placed on the record. Below is a pertinent excerpt of the hearing.

*Plaintiff's Counsel:* You Honor, my client has [an] upper extremity problem which may be systemic or it may be as a result of an injury, but in any event, she is receiving other benefits that would be offset by Worker's Compensation. If the settlement is approved today, there would be no effect on those other benefits, so as she's entitled to continue to collect them, she'll receive them. Is that right, Counsel?

*Counsel for Michigan Bell:* Ms. Evans is currently receiving a long-term disability benefit from the Connecticut General Life Insurance Company. I do not represent that firm, however, I can state for the record that it's my understanding that these benefits would continue so long as Ms. Evans continues to meet the requirements of the LTD carrier. They can be affected to some degree by Social Security Disability benefits, but the Plaintiff and her Counsel would have to obtain information regarding that effect from the carrier.

*Plaintiff's Counsel:* I just want to make sure that this settlement will have no effect on those benefits. I understand about the Social Security.

*Counsel for Michigan Bell:* This settlement itself would have no effect provided the Magistrate sees fit to allocate the net settlement proceeds to past, present and future medical expenses.

Based on the correspondence set forth *supra* as well as the above-quoted portions of

the September 8, 1993 hearing, plaintiff maintains that there is a question of fact as to whether she was ever promised that her LTD benefit would not be offset by her disability pension benefit. Such a question of fact, so plaintiff asserts, gives rise to another question of fact regarding the reasonableness of the LTD Plan administrator's decision to reduce her LTD benefit by the amount of her disability pension benefit. Plaintiff argues that if Michigan Bell did indeed promise never to offset her LTD benefit by the amount of her disability pension benefit, then the Plan's April, 1997 decision to do just that is inherently arbitrary and capricious. *See Edwards v. State Farm Mutual Auto. Ins. Co.,* 851 F.2d 134 (6th Cir.1988) (holding that a decision to deny benefits is inherently arbitrary and capricious when it validates a misleading course of action).

Defendant contends that the above-mentioned evidence does not show any promise by Michigan Bell not to offset plaintiff's LTD benefits with her pension disability benefits. Defendant argues that, at most, such evidence establishes a promise by Michigan Bell not to offset plaintiff's LTD and pension disability benefits with her workers compensation settlement. Moreover, in support of their argument that no promise was made not to offset plaintiff's LTD benefits with pension disability benefits, defendant refers this court to the redemption order, redemption agreement and release, all of which were issued in plaintiff's workers compensation case and none of which mention any promise by Michigan Bell not to perform such an offset.

This court is satisfied that there is no evidence in the record demonstrating a promise by Michigan Bell not to offset plaintiff's LTD benefit by the amount of her disability pension benefit. Viewing the evidence in a light most favorable to the plaintiff, it shows only a promise by Michigan Bell not to reduce plaintiff's disability pension benefits and/or her LTD benefits by the

---

**4.** Defendants argue that the correspondence antedating the settlement of plaintiff's workers compensation claim is barred by either the parol evidence rule or Federal Rule of Evidence 408. This court will not decide whether the parol evidence rule or Federal Rule of Evidence 408 is applicable. That decision has no bearing on the ultimate conclusion reached by this court here. Whether or not such evidence is considered, this court is of the opinion that summary judgment should be granted the defendants.

amount of the worker's compensation redemption.

Beginning with the July 15, 1993 letter, it discusses the effect the workers compensation redemption would have on plaintiff's LTD benefit. Counsel for Michigan Bell makes it clear that *"the redemption [of the workers compensation claim] would have no effect upon the plaintiff's LTD benefits."* By making such a representation, counsel for Michigan Bell was expressing his understanding that plaintiff's LTD benefit would be unaffected *by the workers compensation redemption.* Counsel for Michigan Bell was not representing that plaintiff's pension disability benefit would have no effect on plaintiff's LTD benefit.

Turning to the letter dated August 11, 1993, counsel for Michigan Bell again states that *the redemption of plaintiff's worker's compensation claim* would have no effect on plaintiff's eligibility for LTD benefits. He does not state that plaintiff's disability pension benefit will have no effect on the LTD benefit.

Lest there be no doubt as to the scope of the 1993 settlement agreement, plaintiff's counsel's remarks at the September 8, 1998 hearing make plain that the only promise Michigan Bell made was that plaintiff's LTD, pension benefits (and other benefits) would not be offset by her workers compensation redemption:

> Your Honor, my client has an upper extremity problem which may be systemic or may be as a result of an injury, but in any event, **she is receiving other benefits that would be offset** *by Workers' Compensation.* **If the settlement is approved today, there would be no effect on those other benefits,** so as she's entitled to continue to collect them, she'll receive them.

It is true that in the process of settlement negotiations and at the hearing on September 8, 1993, counsel for Michigan Bell underscored the fact that plaintiff's LTD benefits could be reduced if plaintiff were to qualify for *Social Security disability benefits.* However, counsel for Michigan Bell never specifically states that plaintiff's LTD benefits could also be reduced by the amount of plaintiff's *disability pension benefits.* Although

counsel for Michigan Bell did not make such a statement, his silence in this regard should not act as an estoppel barring the ASDC from ever offsetting plaintiff's LTD benefit by the amount of her disability pension benefit.

In a nutshell, this court finds no evidence of an agreement by Michigan Bell, Ameritech, or ADSC to not reduce plaintiff's LTD benefits by the amount of her disability pension benefits. Accordingly, this court finds that as a matter of law defendants' decision to offset plaintiff's LTD benefit by the amount of her pension disability benefits is not arbitrary and capricious and summary judgment will be entered forthwith in favor of defendants on plaintiff's ERISA claim.

### *ORDER*

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment be **GRANTED** and that this case be dismissed with prejudice.

**SO ORDERED.**

### *JUDGMENT*

This action came before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly reviewed and a decision having been duly rendered.

**IT IS ORDERED AND ADJUDGED** that judgment be entered for the defendants, that plaintiff take nothing and that the action be dismissed.

It is further **ORDERED** that the clerk serve a copy of the judgment by United States mail on the counsel for plaintiff and on counsel for defendants.