Karl **ERIKSEN**, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY**, Defendant.

No. 98–CV–71120–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 23, 1999.

Dennis A. Ross, Southfield MI, for plaintiff.

Randolph D. Phifer, Detroit, MI, for defendant.

## OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

This matter is presently before the Court on the Motion for Summary Judgment filed by Defendant Metropolitan Life Insurance Company ("MetLife"). Plaintiff has responded to Defendant's Motion to which Response Defendant has replied. Having reviewed the parties' briefs and supporting documents, and having heard the oral arguments of counsel at the hearing held on February 11, 1999, the Court is now prepared issue its decision.

### II. SUMMARY JUDGMENT IS NOT AVAILABLE IN ERISA DENIAL OF BENEFITS ACTIONS

■ As an initial matter, the Court notes that neither party seems to be aware of the Sixth Circuit's August 4, 1998 decision in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir.1998), holding that summary judgment procedures may no longer be used in this Circuit in ERISA actions to recover benefits. In *Wilkins,* the court determined that district courts should not adjudicate ERISA actions as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense. 150 F.3d at 618–19. Accordingly, the court established a set of guidelines to replace summary judgment procedures for district courts to use in adjudicating ERISA recovery of benefits actions.

As to the merits of the claim, the *Wilkins* court instructed district courts to conduct a *"de novo"* or "arbitrary and capricious" review[1] based solely upon the administrative record and render "findings of fact" and "conclusions of law" accordingly. *Id.* at 619. *See also, Marchetti v. Sun Life Assurance Co.*, 30 F.Supp.2d 1001 (M.D.Tenn.1998). In so doing, the court may consider the parties' arguments

---

**1.** Although in fashioning its "suggested guidelines" the *Wilkins* court did not mention the possibility of an "arbitrary and capricious" review and stated only that "the district court should conduct a *de novo* review," this Court does not believe that the Court of Appeals intended to contravene *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), or overrule its previous rulings in *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979 (6th Cir.1991) and *Perez v. Aetna Life Insurance Company*, (*en banc*) 150 F.3d 550, 555 (6th Cir.1998), which clearly provide for an "arbitrary and capricious," rather than a *de novo,* standard if the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. (This issue is discussed in detail *infra* in section IV–A of this Opinion.) The Court believes that the appellate court spoke only in terms of *de novo* review in *Wilkins* because in that case, the district court had determined that the employee benefit plan in question did not give the plan administrator discretionary power with respect to interpretation of the plan so as to entitle the defendant to an "arbitrary and capricious" standard of review and the parties did not contest that determination on appeal. 150 F.3d 609, 613 n. 3. Therefore, the court applied a *de novo* standard of review in deciding *Wilkins. Id.*

concerning the proper analysis of the evidence contained in the administrative record. *Wilkins, supra; Marchetti, supra.* However, it may not admit or consider any evidence not presented to the administrator except where there is a procedural challenge to the administrator's decision, such as lack of due process afforded by the administrator or alleged bias on its part. *Id.* (Pre-hearing discovery should also be limited to such procedural challenges. *Id.*)[2]

Therefore, the Court will treat Defendant MetLife's Motion for Summary Judgment as a motion for entry of judgment upholding the plan administrator's decision and, there being no due process or bias challenge to the administrator's decision, will decide this matter pursuant to the guidelines set forth in *Wilkins* by rendering findings of fact and conclusions of law based solely upon the administrative record.

Accordingly, the Court makes the following findings of fact and conclusions of law. To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are so adopted.

### III. FINDINGS OF FACT

The Administrative Record reveals the following facts. Plaintiff Karl Eriksen is a 32–year–old former employee of The Home Depot. [See Defendant's Ex. B.] Mr. Eriksen began working for Home Depot in November 1994 as a department salesperson. See Defendant's Ex. L–139.[3] Eriksen's duties as a department salesperson included assisting customers by explaining the items sold in the department and by answering their questions; pricing and displaying products; opening cartons and placing merchandise in the assigned product locations; and assisting in training new employees. The physical requirements of the job included: hand and finger dexterity to open cartons, remove merchandise and apply price tickets for up to eight hours a day; continuous walking; being able to climb a ladder up to a height of 16 feet to place and retrieve merchandise from storage; bending, stooping, reaching, twisting; and lifting, carrying and moving items of up to 95 pounds, without assistance.

### PLAINTIFF'S INJURY AND MEDICAL TREATMENT

In early August 1996, Plaintiff injured his back while riding on amusement park rides at Cedar Point. On August 9, 1996, he went to his family doctor, Dr. Robert Landsdorf D.O., at the Pontiac Trail Medical Clinic complaining of back pain.[4] Dr. Landsdorf's diagnosis was "lumbar myositis." He determined that Mr. Eriksen was "totally incapacitated" due to his back problem and he, accordingly, certified him as disabled from his job [See Defendant's Ex. L, pp. 112–114.] Dr. Landsdorf subsequently had an MRI performed on Plaintiff's spine on August 26, 1996. That MRI showed no evidence of disc degeneration, disc bulge or herniation. [See Ex. L–1.]

---

2. As this Court reads *Wilkins,* these new guidelines only replace the summary judgment procedure deciding ERISA denial of benefits actions "on the merits." However, nothing in *Wilkins* suggests that summary judgment is precluded where the defendant posits a statute of limitations argument or a "failure to exhaust intra-plan remedies" argument.

3. Defendant's Ex. L is MetLife's entire Administrative Record concerning Plaintiff's claim. Defendant has extracted copies of certain documents contained within Exhibit L and attached them as separate exhibits B through K. The complete Administrative Record (Exhibit L), however, is not in chronological order, not grouped by medical care provider, and is not page-numbered. The page numbers referenced, therefore, are added for convenience and correspond with the order in which the documents appear within Exhibit L.

4. Dr. Carl Johnson also practiced at the Pontiac Trail Medical Clinic. Plaintiff saw both Dr. Landsdorf and Dr. Johnson for his back pain.

Dr. Landsdorf again saw Plaintiff on September 11, 1996. After this visit, Dr. Landsdorf referred Mr. Eriksen to Dr. Young Seo, M.D. of the Bloomfield Hills Pain Clinic.

Dr. Seo treated Plaintiff from September 19, 1996 through November 4, 1997. After performing an examination, an EMG and Nerve Conduction Study, Dr. Seo's diagnosis was that Mr. Eriksen was suffering from lumbar L5 radiculopathy right side, mild degree, most likely as a result of disc damage. [Ex. L–14.] He treated Plaintiff with nerve blocks (acupuncture), prescribed medication for pain, and directed him to remain off work. *Id. See also,* Ex. L–111. Thereafter, Dr. Seo treated Plaintiff approximately every two to four weeks. [Ex. L–30, 32–35, 37–38, 40–47, 97–102.]

Because Mr. Eriksen did not appear to be responding to his treatment, in February 1997, Dr. Seo referred him to a neurosurgeon, Dr. Hari G. Chopra, M.D. to determine whether disc surgery was required. [See Ex. L–38, 40.] Dr. Chopra performed a myelogram and a post-myelogram CT scan on Plaintiff on March 5, 1997 which were normal—they showed "no evidence to suggest the presence of spinal stenosis, disc herniation or protrusion." See Ex. L–65–66. Based upon his exam of Plaintiff and the myelogram and CT scan, on March 10, 1997, Dr. Chopra gave Mr. Eriksen some back exercises to do, recommended that he "continue with conservative pain management" through the use of anti-inflammatory medication, and told him he "should return to work, with some restrictions." Ex. L–39. Dr. Chopra, accordingly, referred Plaintiff back to Dr. Seo, and indicated that Mr. Eriksen should return to see him again if his condition worsened. *Id.*

Plaintiff returned to treatment with Dr. Seo, who also gave Plaintiff exercises to do and then subsequently referred him to a chiropractor. Notwithstanding Dr. Chopra's recommendation, Dr. Seo continued to recommend that Plaintiff remain off work. See Ex. L–44 (no work until June 1997), L–48 (no work until December 1997).

## PLAINTIFF'S CLAIM FOR LONG–TERM DISABILITY BENEFITS

Meanwhile, from August 8, 1996 through February 6, 1997, Plaintiff received Short–Term Disability Benefits under the Home Depot Benefits Program. The Home Depot Benefits Program (the "Plan") is administered by MetLife. When his Short–Term benefits expired, Plaintiff filed a claim for Long–Term Disability Benefits under the Plan.

The Home Depot Plan provides the following with respect to qualifying for Long Term Disability Benefits:

... [T]o qualify for long-term disability benefits:

- you must be unable to return to work after the initial 26–week period of [short-term] disability
- you must continue to be under the care of a qualified doctor (Qualified doctors include legally licensed physicians and practitioners)
- you must not be able to engage in any type of work
- Metropolitan Life Insurance Company, the plan's insurer, must receive certification of a disability from your attending doctor before benefits are paid.

Defendant's Ex. A, p. 72.

MetLife had Plaintiff's claim for disability benefits reviewed by independent medical examiners on January 14, 1997, i.e., when Plaintiff's short-term benefits were about to expire and his eligibility for long-term disability benefits was about to commence. Plaintiff's medical records through December 13, 1996 were reviewed by Dr. Robert Bertrand, M.D., a Board–Certified Occupational Medicine Physician, and Dr. Richard Silver, M.D., a Board–Certified Orthopedic Surgeon. Based upon the tests performed by Drs. Landsdorf and Seo and the medical records of treatment provided by Drs. Landsdorf,

Johnson and Seo through December 1996, and the initial medical record review performed by MetLife's Medical Reviews staff doctor, Dr. George Lim, M.D., Dr. Bertrand determined that Plaintiff was correctly diagnosed with a lumbosacral strain with resultant myositis that was being treated appropriately. [See Defendant's Ex. C.] Dr. Bertrand further opined that based upon the medical records provided as of that date (January 14, 1997) the degree of work Plaintiff was required to do in his Home Depot sales position would be "potentially hazardous to him at this time." *Id.* However, he concluded that Mr. Eriksen's impairment was temporary, and that he could go back to work with the following limitations:

| | |
|---|---|
| LIFTING/CARRYING: | 30 pounds occasionally, 15 pounds frequently |
| PUSHING/PULLING: | Up to 50 pounds |
| BENDING: | Occasionally |
| SQUATTING/STOOPING: | To be avoided |
| TWISTING: | Occasionally |
| SITTING: | Eight hours out of an 8-hour day with the ability to get up and move around every hour |
| STANDING: | Four hours out of an 8-hour day in 45-minute to 1-hour increments |
| WALKING: | Four hours out of an 8-hour day for short distances |
| CLIMBING: | No ladder climbing; stair-climbing 1-2 flights of stairs occasionally |
| UPPER EXTREMITIES: | No restriction on use |
| LOWER EXTREMITIES: | No restriction for use of foot controls. |

*Id.*[5]

Dr. Silver concurred in Dr. Bertrand's assessment of Plaintiff's condition and he, too, determined that "Mr. Eriksen is not capable of returning to unrestricted gainful employment, however, he is capable of being gainfully employed at light duty with the restrictions noted earlier by Dr. Bertrand." *Id.*

Following Dr. Bertrand's and Dr. Silver's medical record review, on April 1, 1997, MetLife received from Dr. Seo and Dr. Chopra February–March 1997 records concerning Plaintiff (including Dr. Chopra's March 10, 1997 recommendation that Plaintiff "should return to work, with restrictions"). On May 1, 1997, based upon the medical records provided as of that

date, and Dr. Bertrand's and Dr. Silver's review of the records, MetLife notified Plaintiff that his claim for Long Term Disability benefits was being denied. [See Defendant's Ex. D.] MetLife advised Mr. Eriksen that he was not entitled to long-term disability benefits under the terms of the Home Depot Plan because he could perform light duty work. *Id.*

On June 23, 1997, Plaintiff, through counsel, notified MetLife of his desire to appeal the decision to deny him long-term benefits. Subsequently, in accordance with MetLife's request, Plaintiff submitted copies of his medical records through November 4, 1997. MetLife, in turn, had all of Plaintiff's medical records—both those records previously reviewed and the post-May 1997 records—reviewed by Dr. Robert D. Petrie, M.D., a specialist in Occupational Medicine, and re-reviewed by Orthopedic Surgeon Dr. Richard Silva on December 30, 1997. [See Defendant's Ex. J.]

Based upon his review of Plaintiff's original claim file, the January 1997 reports of Drs. Bertrand and Silver, and the additional information submitted by Mr. Eriksen following the May 1, 1997 denial of his claim, Dr. Petrie concluded that "Mr. Eriksen's subjective complaints are without objective physical findings, and would not have necessitated restrictions on his activities from March 1, 1997 to the present." *Id.* He determined that the "minor changes Dr. Seo identified on Mr. Eriksen's EMG/nerve conduction study are not significant, and corroborating objective findings were not identified by the consulting neurosurgeon," noting that the "myelogram of the lumbar spine was found to be completely normal" *Id.* He further observed that "Mr. Eriksen has no documented evidence of muscle weakness, muscle atrophy, dermatomal sensory deficits or reflex assymetry." *Id.* Dr. Silver agreed with Dr. Petrie's findings. *Id.*

---

**5.** As Dr. Bertrand noted, these "residual function capacities" are comparable with the Department of Labor's Work Category definition of "light to medium work." *Id.*

On January 6, 1998, MetLife notified Plaintiff's counsel that it adhered to its original decision to deny his claim for benefits explaining:

> As noted in our letter of denial to Mr. Eriksen dated May 1, 1997, according to the Home Depot Group Plan you must not be able to engage in any type of work [to qualify for long-term disability benefits].
>
> Our original determination to deny LTD benefits was based upon all the medical and vocational information Mr. Eriksen's claim file, including information from his employer and treating physicians. We also had the claim file information reviewed by an independent medical consulting group.
>
> The information submitted as part of the appeal process has been thoroughly reviewed in its entirety in conjunction with the independent medical consulting group. It is their findings and ours that Mr. Eriksen is capable of gainful employment from an orthopedic standpoint. Mr. Eriksen does not have any documented focal neurological deficit, and is capable of returning to gainful employment.

Defendant's Ex. K.

On February 9, 1998, Plaintiff filed the instant lawsuit in Oakland County Circuit Court as a breach of contract action. MetLife timely removed the action to this Court on federal question grounds under the Employee Retirement Income Security Act of 1974 ("ERISA"). In accordance with the Court's deadline for the filing of dispositive motions, MetLife has filed the instant motion seeking entry of a judgment as a matter of law in its favor.

## IV. CONCLUSIONS OF LAW

### A. STANDARD AND SCOPE OF JUDICIAL REVIEW IN ERISA CASES

■ The Supreme Court has ruled that the standard of review in ERISA cases is *de novo* unless the benefit plan gives the plan administrator discretion to determine eligibility for benefits or to construe plan terms:

> As this case aptly demonstrates, the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under Section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Thus, it is clear that it is only if the benefit plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan", that the trial court may use an "arbitrary and capricious" standard in reviewing the administrator's claim determination.

The Sixth Circuit has broadly interpreted the *Firestone* court's holding. In *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991), the court held that the ERISA plan in question does not have to give the insurer **complete** discretion with respect to the ultimate determination of benefit eligibility. *Id.* at 984, *citing Bali v. Blue Cross and Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir.1989). However, under the *Miller* court's formulation of the rule, to satisfy the *Firestone* "grant-of-discretionary-authority" touchstone and trigger an "arbitrary and capricious" standard the benefit plan must grant the plan administrator the discretion

> (1) to make reasonable requests for documentation *and* (2) to determine what evidence may be required to provide a basis for [benefit eligibility] determination."

925 F.2d at 984 (enumeration and emphasis added).

The Home Depot Plan under which Plaintiff seeks to recover long-term disability benefits provides in pertinent part, as follows:

> *The Home Depot as plan administrator, and/or its designated administrative agents or representatives, **has [sic] the full power and authority in their absolute discretion to determine all questions of eligibility for benefits, and to interpret and construe the terms of the plans.*** Upon a proper review, a determination will be conclusive and binding.

Defendant's Ex. A p. 122.

Home Depot has appointed MetLife as its designated administrative agent for its Short Term and Long–Term Disability Benefits Plans. *Id.* at 118. The above-quoted language from the Plan makes clear that MetLife has been granted complete discretion to determine eligibility for benefits under the Plan. Therefore, MetLife is entitled to an "arbitrary and capricious" standard of review by this Court in reviewing the decision to deny Plaintiff's claim for long-term disability benefits.

█ Under an arbitrary and capricious standard of review, the Court is called upon to determine whether the Defendant's decision to deny the Plaintiff benefits was rational and consistent with terms of the policy. *Miller v. Metropolitan Life Insurance Co., supra,* 925 F.2d at 984. Stated otherwise, "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990).

█ An arbitrary and capricious standard is highly deferential and requires that the administrator's decision be upheld as long as it is rational in light of the plan's provisions as well as reasonable with no abuse of discretion. *Marchetti v. Sun Life Assurance Company,* 30 F.Supp.2d 1001, 1007 (M.D.Tenn.1998). It is only if the court is confident that the decision maker overlooked something important or seriously erred in appreciating the significance of evidence that it may conclude that a decision was arbitrary and capricious. *Wahlin v. Sears, Roebuck & Co.,* 78 F.3d 1232, 1235 (7th Cir.1996).

**B.** *METLIFE'S DECISION TO DENY PLAINTIFF'S CLAIM IN THIS CASE WAS NOT ARBITRARY OR CAPRICIOUS*

█ Applying the foregoing authorities to the facts of this case, the Court finds that MetLife's decision to deny Plaintiff's claim was not arbitrary or capricious. The record clearly establishes that MetLife did not overlook any evidence or err in appreciate the significance of the evidence presented to it. While it appears that the administrator relied heavily upon Dr. Petrie's and Dr. Silver's report concerning their separate reviews of Plaintiff's medical records, the doctors acknowledged in issuing their report that Plaintiff's treating physician Dr. Seo continued to recommend that Mr. Eriksen remain off work. However, as they noted, there is no "objective evidence" of record to support Seo's recommendation. By contrast, the objective evidence submitted to MetLife—Plaintiff's myelogram and post-myelogram CT scan—as well as the report of Dr. Chopra, the specialist (neurologist) to whom Dr. Seo referred Plaintiff, showed no permanent disability. Therefore, Dr. Petrie's and Dr. Silver's conclusion that Plaintiff could return to gainful employment doing light work is not irrational. No significant evidence was overlooked or not appreciated.

Because the Home Depot Plan requires that a claimant establish that he "not be able to engage in *any* type of work" in order to qualify for long-term disability benefits, because the medical evidence submitted by Plaintiff showed that he could perform at least "light duty" work, MetLife's decision to deny Plaintiff long-term disability benefits is rational and con-

sistent with the Plan provisions.[6] Therefore, MetLife decision regarding Plaintiff's claim will be upheld and judgment, accordingly, will be entered in favor of Defendant.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Judgment be, and hereby is, entered in favor of Defendant MetLife. Accordingly, the decision of the administrator denying Plaintiff's claim for long-term disability benefits is affirmed.

SO ORDERED.

---

**6.** Plaintiff makes no argument challenging MetLife's interpretation of the medical evidence presented. Rather, he contends that MetLife acted arbitrarily and capriciously in denying his claim for benefits because it did not order that he undergo an independent medical examination before making its decision. However, nothing in the Home Depot Plan requires an IME. Not having acted contrary to the terms of the Plan, it cannot be said that MetLife acted arbitrarily and capriciously in denying Plaintiff's claim.

Plaintiff's only other argument is that he should be entitled to long-term disability benefits because in June 1998, i.e., more than six months after MetLife made its final determination, he was found to be disabled for social security disability purposes as of August 8, 1996 by an administrative law judge and awarded social security disability benefits retroactive to that date. However, evidence of the decision of the social security administrative law judge was *not* before MetLife at the time it rendered its final decision. Therefore, it cannot be considered by this Court.