**Ronald T. GUZY, Plaintiff,**

v.

**AMERITECH CORPORATION, Ameritech Management Pension Plan, State Street Bank and Trust Company, and the Ameritech Benefit Plan Committee, Defendants.**

No. Civ. 98–40265.

United States District Court,
E.D. Michigan,
Southern Division.

May 28, 1999.

Dennis M. Doherty, Dykema, Gossett, Bloomfield Hills, MI, Bruce G. Davis, Dykema Gossett, Lansing, MI, for Plaintiff.

Albert Calille, Ameritech, Detroit, MI, for Defendants.

## *MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Presently before the Court are the parties' cross motions for summary judgment. This case concerns a dispute between plaintiff Ronald T. Guzy, a retired Ameritech employee, and defendants Ameritech Corporation, Ameritech Management Pension Plan, State Street Bank and Trust Company and the Ameritech Benefit Plan Committee regarding the calculation and apportionment of pension benefits payable to plaintiff and plaintiff's ex-wife pursuant to a Qualified Domestic Relations Order (QDRO). On March 16, 1999, plaintiff Ronald T. Guzy filed a motion for summary judgment. On March 18, 1999, defendants filed their own motion for summary judgment. Defendants responded to plaintiff's motion on April 9, 1999. Plaintiff responded to defendants' motion on April 8, 1999. A hearing on the parties' cross motions for summary judgment was conducted May 5, 1999.

For the reasons set forth below, the Court will deny plaintiff's motion for summary judgment and grant defendants' motion for summary judgment.

## I. FACTUAL BACKGROUND

Plaintiff Guzy worked for approximately 30 years for defendant Ameritech Corporation and retired effective July 31, 1996. Upon retirement, plaintiff became eligible for benefits payable under two retirement plans, to wit: (1) the Ameritech Management Pension Plan ("Plan") and (2) the

Ameritech Management Supplemental Pension Plan ("Supplemental Plan"). *See* Exhs. B and C of plaintiff's brief in support of motion for summary judgment.

It is undisputed that the Plan is a "qualified" plan pursuant to Section 401(a) of the Internal Revenue Code. *See* 26 U.S.C. § 401(a). This "qualified" status provides certain tax advantages to both employer and employee. It is also undisputed that the Supplemental Plan is a "*non*-qualified" plan which was set up for the express purpose of providing to the employee "retirement and other benefits that are accrued under the Pension Plan but are in excess of the limitation on benefits imposed by section 415 or section 401(a)(17) of the Internal Revenue Code...." *See* Suppl. Plan attached as Exh. C to plaintiff's brief ¶ 1.1.

On April 24, 1996, as a result of a divorce settlement between plaintiff and his ex-wife, the Court of Common Pleas Division of Domestic Relations for Cuyahoga County, Ohio entered a Qualified Domestic Relations Order (QDRO). *See* Exh. C to defendant's brief in support of motion for summary judgment. The parties' entire dispute in the instant case is which pension benefits are subject to division under the QDRO.[1]

Plaintiff claims that the QDRO applies to the Plan but not to the Supplemental Plan. According to plaintiff, defendants' inclusion of the Supplemental Plan's benefits amount in the calculation of his ex-wife's 50% share was in violation of the QDRO and thus should be corrected. According to plaintiff, only the Plan's benefits should be subject to the QDRO 50% apportionment.

Defendants argue that the QDRO mandates inclusion of both plans' retirement benefits in calculating the respective shares to be apportioned between plaintiff and his ex-wife. Defendants rely upon the finding of the Ameritech Benefit Plan Committee which considered plaintiff's appeal of his benefits determination.[2] On April 14, 1998, the committee denied plaintiff's appeal and sent a letter explaining its decision to plaintiff's counsel on May 4, 1998. *See* Exh. E to Defendants' Brief in Support of Motion for Summary Judgment.

Plaintiff initiated the instant law suit on July 24, 1998, alleging that defendants wrongfully denied plaintiff pension plan benefits pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), that defendants breached their fiduciary duty to plaintiff pursuant to ERISA, 29 U.S.C. § 1132(a)(2), and that defendants should be found liable for statutory sanctions for failure to timely provide ERISA documents pursuant to 29 U.S.C. § 1132(a)(1)(A).

---

1. ERISA and the Internal Revenue Code (IRC) generally provide that tax-qualified pension plans, such as the plan in the present case, prohibit assignment or alienation of a participant's retirement benefits. *See* ERISA, 29 U.S.C. § 1056(d)(1) and IRC, 26 U.S.C. § 401(a)(13). In 1984, however, Congress amended ERISA and the IRC to allow assignments in situations where a domestic relations order has been entered by the state court and provided that the order complies with certain statutory requirements. *See* 29 U.S.C. § 1056(d)(3) and 26 U.S.C. § 414(p). In the instant case, there is no dispute that the QDRO is an ERISA-"qualified" domestic relations order.

2. Plaintiff alleges that several times during 1996, he informed defendants that they had miscalculated his pension benefits. On April 7, 1997, plaintiff's counsel filed a claim for pension benefits on his behalf. *See* Exh. E to plaintiff's brief. In June 1997, defendants allegedly told plaintiff to filed a "formal" claim for pension benefits. *See* Exh. F to plaintiff's brief. On August 7, 1997, plaintiff filed another claim for pension benefits. *See* Exh. G to plaintiff's brief. According to plaintiff, defendants did not respond. On November 20, 1997, plaintiff's counsel filed another claim for pension benefits. *See* Exh. H to plaintiff's brief. On January 8, 1998, defendants responded to plaintiff's claim. *See* Exh. I to plaintiff's brief. On February 20, 1998, plaintiff filed an appeal of his denied claim. *See* Exh. J to plaintiff's brief.

## II. JURISDICTION

This Court's subject matter jurisdiction is premised upon the existence of a federal question pursuant to 28 U.S.C. § 1331. Specifically, plaintiff has brought claims under ERISA relating to defendants' calculation and apportionment of his retirement benefits. *See* 29 U.S.C. § 1132(a). It is important to note that since the instant action is based upon ERISA, plaintiff was required to comply with the statutory scheme contained within that Act by exhausting his administrative remedies prior to commencing suit in federal court. *See* 29 U.S.C. § 1133(2); *see also Miller v. Met. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451 (6th Cir.1991). Plaintiff has met this preliminary threshold in the case at bar.

## III. SUMMARY JUDGMENT IS NOT AVAILABLE IN ERISA DENIAL OF BENEFITS ACTIONS.

At the outset, the Court notes that the Sixth Circuit in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir.1998), has held that summary judgment procedures are "inapposite to the adjudication of ERISA actions" to recover benefits. *See id.* at 619; *see also Eriksen v. Met. Life Ins. Co.*, 39 F.Supp.2d 864 (E.D.Mich.1999) (Rosen, J.). In *Wilkins*, the court held that "[b]ecause this court's precedents preclude an ERISA action from being heard by the district court as a regular bench

3. The Sixth Circuit in *Wilkins* provided the following "suggested guidelines" for district courts to follow in adjudicating an ERISA action:

1. As to the merits of the action, the district court should conduct a de novo review [unless the "arbitrary or capricious" standard is applicable] based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

2. The district court may consider evidence outside of the administrative record

trial, it makes little sense to deal with such an action by engaging a procedure designed solely to determine 'whether there is a genuine issue for trial.' "[3] *Wilkins*, 150 F.3d at 619; *see also Eriksen*, at 865. In keeping with *Wilkins* and Judge Rosen's recent opinion in *Eriksen*, this Court will evaluate the instant motions not as motions for summary judgment but rather as motions for entry of judgment either seeking reversal of the plan administrator's decision to deny plaintiff's claim, or seeking affirmation of the plan administrator's decision to deny plaintiff's claim.

## IV. STANDARD OF REVIEW

It must be determined which standard of review is applicable to defendants' denial of plaintiff's claim for pension benefits. Plaintiff urges *de novo* review by this Court of defendants' decision.[4] Defendants maintain that the decision rendered by the Ameritech Benefit Plan Committee should instead be reviewed under the more deferential "arbitrary and capricious" standard.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the U.S. Supreme Court addressed the issue of the appropriate standard of review to be applied by federal courts with respect to denials of employee benefits payable under ERISA plans. In answer to this question, the Court set forth the following rule:

> only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
>
> 3. For the reasons set forth above, the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.
> Id. at 619.

4. Plaintiff argues in the alternative that defendants acted "arbitrarily and capriciously" in denying plaintiff's claim.

a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.* Because we do not rest our decision on the concern for impartiality that guided the Court of Appeals, see 828 F.2d at 143–146, we need. not distinguish between types of plans or focus on the motivations of plan administrators and fiduciaries. Thus, for purposes of actions under § 1132(a)(1)(B), the de novo standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Restatement (Second) of Trusts § 187, Comment d (1959).
*Id.* at 115, 109 S.Ct. 948 (emphasis added); *see also Perry v. Simplicity Engineering,* 900 F.2d 963, 967 (6th Cir.1990) (holding that denial of benefits challenged under ERISA was to be reviewed under *de novo* standard where plan administrator lacked discretionary authority to determine eligibility for benefits or to construe plan's terms); *Evans v. Ameritech,* 12 F.Supp.2d 655, 658 (E.D.Mich.1998) (Gadola, J.) (holding that if the plan expressly grants the plan administrator or fiduciary the authority to determine eligibility for benefits or to construe the plan's terms, the *de novo* standard of review is replaced by an arbitrary and capricious standard).

In the instant case, defendants argue that the benefit plan at issue gives the administrator discretionary authority to determine eligibility for benefits and also to construe the terms of the plan and therefore the general rule requiring *de novo* review is inapplicable. *See* Exh. A to defendant's brief ¶ 11.1(c) (stating that the Ameritech Benefit Plan Committee has au-

thority, *inter alia,* "to make factual determination, [and] to have full discretionary authority to interpret the terms of the Plan to remedy any ambiguities, inconsistencies or omission of whatever kind").

Plaintiff, in response, maintains that what is at issue in the instant case is not the terms of the Plan or Supplemental Plan themselves, but instead the terms and conditions of the Qualified Domestic Relations Order. According to plaintiff, defendants are obligated to follow the terms set forth in the ERISA-qualified QDRO. Plaintiff has cited authority for the proposition that a plan administrator's construction of an ERISA-qualified QDRO is reviewed *de novo* because it involves issues of contract interpretation. *See Hullett v. Towers, Perrin, Forster & Crosby,* 38 F.3d 107, 110 (3d Cir.1994).

In *Hullett,* the plaintiff brought an action against his former wife, his former employer and employer's benefit plan seeking a declaration regarding the status under ERISA of a settlement agreement executed in anticipation of divorce and an injunction prohibiting payment of his pension benefits to his former wife. Just as in the present case, the parties in *Hullett* disputed the appropriate standard of review to be applied by the district court. *See id.* at 113. The Third Circuit, after citing the Supreme Court's rule in *Firestone,* held that the terms of the divorce agreement must be reviewed *de novo* because the meaning of such terms is a matter of contract construction for the court to decide. *See id.* at 114, 109 S.Ct. 948 ("[t]he district court did not err in holding that it should review *de novo* the plan administrator's construction of the Agreement, which involved issues of contract interpretation under the Agreement and not the Plan").

*However,* the Third Circuit also acknowledged that deference should be given to the administrator's decision regarding the payment of benefits because

[i]n making his determination regarding the distribution of payments, the plan

administrator exercised his discretionary authority to construe the terms of the Plan. *Id.* at 114, 109 S.Ct. 948. In summary, the court concluded that "although the district court properly reviewed the plan administrator's interpretation of the Agreement on a *de novo* basis, it erred in refusing to give deference to the plan administrator's determination regarding the payment of benefits under the QDRO." *Id.* at 114–115, 109 S.Ct. 948.

■ "In reviewing a plan administrator's benefits decision, a threshold question is whether the plan gives the decision-maker discretionary authority to rule on benefit claims." *Equitable Life Assurance Society of the United States v. Crysler,* 66 F.3d 944, 949 (8th Cir.1995). "If it does, then the plan administrator or insurer must make the initial decision, which the court then reviews under a deferential standard of review." *See id.* (citing *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 & n. 2 (8th Cir.1993)).

It is clear in the present case that the Ameritech Management Pension Plan *does give* discretionary authority to the plan administrator to determine eligibility for benefits and to construe the terms of the Plan. *See* Exh. A to defendant's brief ¶ 11.1(c). Consequently, the threshold question must be answered in favor of applying the "arbitrary and capricious" standard, as opposed to reviewing *de novo* the plan administrator's decision.

■ At the same time, plaintiff is correct in pointing out that the instant case principally concerns the interpretation of plaintiff's divorce agreement (embodied in the QDRO). Following the "two-step" standard of review articulated in *Hullett,* also involving a dispute relating to a divorce agreement contained within an ERISA-qualified QDRO, this Court will review *de novo* the terms of the QDRO. After a determination has been made as to the correct scope of the terms contained in the QDRO, the Court then will review the administrator's denial of plaintiff's claim under the "arbitrary and capricious" standard.

■ A plan administrator's "determinations are not arbitrary and capricious if they are 'rational in light of the plan's provisions.'" *Perry v. United Food & Comm'l Workers District,* 64 F.3d 238, 242 (6th Cir.1995) (quoting *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 984 (6th Cir.1991)). It is well-settled that this standard "is the least demanding form of judicial review of administrative action.... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (citing *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir.1989)).

## V. ANALYSIS

Of paramount importance in the case at bar is the *scope* of the Qualified Domestic Relations Order issued April 24, 1996. The discussion which follows is divided into three topics: (1) the proper scope of the QDRO in question; (2) plaintiff's claim for damages in the amount of $110 per day for defendants' alleged failure to timely provide ERISA documents pursuant to 29 U.S.C. § 1132(c); and (3) plaintiff's claim for attorneys' fees, costs and lost earnings pursuant to 29 U.S.C. § 1132(a)(3) & (g)(1).

## A. THE PROPER SCOPE OF THE QDRO ENTERED APRIL 24, 1996 BY THE COURT OF COMMON PLEAS DIVISION OF DOMESTIC RELATIONS FOR CUYAHOGA COUNTY, OHIO

Section 1 of the QDRO in question is entitled, "Effect of this Order as a Qualified Domestic Relations Order." That section provides, in pertinent part, as follows:

This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer sponsored defined benefit pension plan that is qualified under Section 401 of the

Internal Revenue Code ... and the Employee Retirement Income Security Act of 1974.... It is intended to constitute a Qualified Domestic Relations Order ... under Section 414(p) of the Code and Section 206(d)(3) of ERISA.

Exh. C to defendant's brief in support of motion for summary judgment, § 1.

Section 4 of the QDRO sets forth the plan name and, most significantly, also serves as the scope provision for the QDRO. Section 4 states that

[t]he name of the Plan to which this Order applies is the Ameritech Management Pension Plan (hereinafter referred to as "Plan"). *Further, any successor plan to the Plan or any other plan(s), to which liability for provision of the Participant's benefits described below is incurred, shall also be subject to the terms of this Order.* Also, any benefits accrued by the Participant under a predecessor plan of the employer or any other defined benefit plan sponsored by the Participant's employer, where liability for benefits accrued under such predecessor plan or other defined plan has been transferred to the Plan, shall also be subject to the terms of this Order.

*Id.* § 4 (emphasis added).

Another critical passage of the QDRO entered April 24, 1996 is Section 7, which sets forth the amount of the alternate payee's benefit. That section provides as follows:

This Order assigns to Alternate Payee an amount equal to Fifty Percent (50%) of the Marital Portion of the Participant's Accrued Benefit under the Plan as of the Participant's benefit commencement date, or the Alternate Payee's benefit commencement date, if earlier. The Marital Portion shall be determined by multiplying the Participant's Accrued Benefit by a fraction ... the numerator of which is the number of years of the Participant's participation in the Plan earned during the marriage (twenty-one (21) years), and the denominator of which is the total number of years of the Partici-

pant's participation in the Plan as of the earlier of his date of cessation of benefit accruals [sic.] or the date that Alternate Payee commences her benefits hereunder.

*Id.* § 7.

Plaintiff argues that the above-quoted passages show that the QDRO limits "payments to [plaintiff's] former spouse to benefits from only 'the Plan' or other 'qualified' plans" and does not contemplate payments from plans which are not qualified under ERISA. In addition, plaintiff directs the Court's attention to the Supplemental Plan itself, which contains a clause prohibiting assignment of benefits. *See* Exh. C to plaintiff's brief in support of motion for summary judgment, § 3.4 ("The benefit payable to, or on account of, any individual under the Supplemental Plan may not be voluntarily or involuntarily assigned or alienated").

Defendant, on the other hand, emphasizes the language in Section 4, quoted above, which provides for payments under "any successor plan ... *or any other plan(s),* to which liability for provision of the Participant's benefits described below is incurred, shall also be subject to the terms of this Order." Exh. C to defendant's brief, § 4 (emphasis added). According to defendants, "any other plan" includes the Supplemental Plan and is not limited only to ERISA-qualified plans.

 It is well-settled that in interpreting a contract, a court must first begin with an examination of the contract's plain language. *See McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1435 (Fed.Cir. 1996); *Standard Oil Co. v. Ogden & Moffett Co.,* 242 F.2d 287 (6th Cir.1957) (holding that courts will not disregard plain language of a contract or interpolate something not contained therein). In addition, courts must give "the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Harris v. Department of Veterans Affairs,* 142 F.3d 1463, 1467 (Fed.Cir.1998). "When a written agreement is clear and unambiguous,

[a][c]ourt derives the parties' intent from the plain language of the agreement and does not resort to extrinsic evidence to interpret the agreement." *Lipps v. Loyd,* 967 P.2d 558 (Wy.1998).

■ In the instant case, the QDRO in question represents the written agreement entered into between plaintiff and his ex-wife, and which was approved by defendants as being in compliance with ERISA, 29 U.S.C. § 1056(d)(3). Section 1056(d) provides that an anti-assignment clause contained in an ERISA-qualified plan "shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." 29 U.S.C. §.1056(d)(3)(A). As a consequence, it is clear that a statutorily sanctioned QDRO, such as the one in the present case, in effect *supersedes* the plan's terms, and payment must be made in accordance with the QDRO.

■ It is apparent from the plain language contained in Section 4 of the QDRO that the proper scope of the order is *not* limited to ERISA-qualified plans, but instead is broadly construed to encompass "any plan(s)" under which benefits are paid to plaintiff. This was exactly the rationale upon which the Ameritech Benefit Plan Committee based its decision to include the Supplemental Plan in its apportionment calculations. *See* Exh. E to defendants' brief.

Plaintiff nevertheless maintains that the scope of the order should be limited to ERISA-qualified plans. Plaintiff attempts to support this position by citing Section 7 of the QDRO. Specifically, plaintiff points to the language in Section 7 which defines the assignment to plaintiff's ex-spouse in terms of plaintiff's "accrued benefit." As plaintiff construes this term, "accrued benefit" is the amount payable under the Plan, to the exclusion of any amounts payable under the Supplemental Plan.

Defendants argue that the term "accrued benefits" includes all benefits received by plaintiff. *See* Ameritech Benefit Plan Committee's letter dated May 4, 1998, attached as Exh. E to defendants' brief. According to defendants, the committee relied upon Section 5.1(b) of the Plan in calculating plaintiff's "accrued benefits" subject to the QDRO. *See* Defendants' brief in response to plaintiff's motion, p. 8. The accrued benefits calculation in Section 5.1(b) is based on the definition of compensation set forth in Section 5.2(b), which provides in pertinent part as follows:

"Compensation" shall mean the basic pay, shift differentials, lump sum merit wage payments, Management Incentive Compensation (both team and individual components), Incentive Awards received under the Senior Management Short–Term Incentive Plan and sales commissions paid to an employee ... determined without regard to any reduction in such compensation in accordance with section 401(k) or section 125 of the Code.

Ameritech Management Pension Plan § 5.2(b), attached as Exh. A to defendants' brief.

This Court finds that the definition of "compensation" quoted above does *not* limit a plan participant's compensation to the statutory amount set forth in the Internal Revenue Code, 26 U.S.C. § 401. Accordingly, the Ameritech Benefit Plan Committee correctly determined that "accrued benefits" are to be calculated without regard to the compensation limit provided for in the Code. "Accrued benefits" and the term "incurred benefits" found in Section 4 of the QDRO therefore refer to *all* pension benefits payable to plaintiff upon retirement. Additionally, it should be noted that plaintiff has cited no provision of ERISA or of the Internal Revenue Code which would prevent a QDRO from applying to non-qualified plans.

After a *de novo* review of the divorce agreement between plaintiff and his ex-wife, as embodied in the QDRO, the Court finds that the scope of the QDRO extends to benefits from *both* the Plan *and* the Supplemental Plan. As such, it cannot be said that the Ameritech Benefit Plan Com-

mittee's decision to deny plaintiff's request for a re-calculation was arbitrary or capricious. This Court is in agreement with the benefit committee's determination as to the proper scope of the QDRO.

It should also be mentioned that even if this Court, after a *de novo* review of that document, had interpreted the QDRO differently from the benefit committee, it has been established that a plan administrator's "determinations are not arbitrary and capricious if they are rational in light of the plan's provisions." *Perry*, 64 F.3d at 242. As mentioned above, this standard "is the least demanding form of judicial review of administrative action." *Id.* Furthermore, the Sixth Circuit has consistently held that "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* It is clear that defendants have offered "a reasoned explanation" for their denial of plaintiff's claim for re-calculation.

One additional argument must be addressed. Plaintiff strenuously contends that a re-calculation is required for a further reason: that the terms of the Supplemental Plan prohibit assignment or alienation. *See* Supplemental Plan § 3.4, attached as Exh. B to Defendant's Brief in Support of Motion for Summary Judgment. While this is certainly true, defendants at oral argument made clear that the Supplemental Plan's anti-assignment

provision had not been transgressed in the instant case. Defendants maintain that all the benefits to which plaintiff and his ex-spouse are entitled have already been paid out of the ERISA-qualified Plan as a lump-sum, and not out of the Supplemental Plan. *See* Defendants' Reply to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 5. In light of this fact, the Court agrees that plaintiff has no basis for arguing that the Supplemental Plan's prohibition of assignment or alienation of benefits has been violated, or that Section 3.4 of the Supplemental Plan may be used to invalidate the Ameritech Benefit Plan Committee's determination of benefits.

## B. PLAINTIFF'S CLAIM FOR DAMAGES IN THE AMOUNT OF $110 PER DAY FOR DEFENDANTS' FAILURE TO TIMELY PROVIDE ERISA DOCUMENTS PURSUANT TO 29 U.S.C. § 1132(C).

Plaintiff seeks statutory damages for defendants' failure to timely provide ERISA documents pursuant to 29 U.S.C. § 1132(c). On April 7, 1997, counsel for plaintiff requested copies of various Plan and Supplemental Plan documents. According to plaintiff, defendants did not respond to the request for documents within 30 days as required under 29 U.S.C. § 1132(c).[5] Counsel for plaintiff asserts that he requested copies of the documents again on May 23, 1997, but did not receive

---

5. section 1132(c) is entitled, "Administrator's refusal to supply requested information; penalty for failure to provide annual report incomplete form," and provides, in full, as follows:

(1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title or section 1021(e)(1) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days

after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

(2) The Secretary may assess a civil penalty against any plan administrator of up to $1,000 a day from the date of such plan administrator's failure or refusal to file the annual report required to be filed with the Secretary under section 1021(b)(4) of this title. For purposes of this paragraph, an

the copies of the documents requested until June 4, 1997. As a consequence, plaintiff seeks an award of $14,850 (5 requested documents × 27 days × $110 per day).

In response, defendant argues that the correspondence presented by plaintiff in support of his statutory damages claim—i.e., the May 23, 1997 letter from plaintiff's counsel to Ms. Kathleen Fritz, Manager of the Pension Plans—clearly shows that the request for documents was not sent to the Plan Administrator but instead to the Manager of Pension Plans. According to defendants, this resulted in a delay in processing plaintiff's request, and, in any event, the plan documents were provided to plaintiff within 60 days.

■■■■ Sanctions under Section 1132(c) are not automatically awarded. *See Bouteiller v. Vulcan Iron Works, Inc.*, 834 F.Supp. 207, 215 (E.D.Mich.1993) (Gadola, J.). The statutory award provided in Section 1132(c) is punitive and designed to induce or compel disclosure of information required under ERISA. *Id.* Although the showing of prejudice is not an explicit statutory prerequisite to the imposition of sanctions under Section 1132(c), "courts generally do not favor imposing a penalty where a plaintiff makes no showing of

prejudice." *See id.* (citing *Paris v. Profit Sharing Plan*, 637 F.2d 357, 362 (5th Cir. 1981)) (holding that with no showing of prejudice, it could not be found that district court abused its discretion in denying damage award under Section 1132(c); *Stenke v. Quanex Corp.*, 759 F.Supp. 1244, 1248 (E.D.Mich.1991)).

■■■■ In the Court's judgment, statutory penalties pursuant to 29 U.S.C. are not warranted in this case. Even if plaintiff's counsel had sent the request for documents to the appropriate person designated as the "plan administrator" instead of to Ms. Fritz, Manager of the Pension Plans, plaintiff has not shown that he suffered any prejudice by the delay. *See Bouteiller*, 834 F.Supp. at 215. Accordingly, the Court shall deny plaintiff's request to impose statutory sanctions for the delay in receiving the documents requested.

### C. PLAINTIFF'S CLAIM FOR AT-TORNEYS' FEES AND COSTS PURSUANT TO 29 U.S.C. § 1132(G)(1) AND LOST EARN-INGS PURSUANT TO 29 U.S.C. § 1132(A)(3).

Plaintiff lastly seeks attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1),

---

annual report that has been rejected under section 1024(a)(4) of this title for failure to provide material information shall not be treated as having been filed with the Secretary.

(3) Any employer maintaining a plan who fails to meet the notice requirement of section 1021(d) of this title with respect to any participant or beneficiary or who fails to meet the requirements of section 1021(e)(2) of this title with respect to any person may in the court's discretion be liable to such participant or beneficiary or to such person in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper.

(4) The Secretary may assess a civil penalty of not more than $1,000 for each violation by any person of section 1021(f)(1) of this title.

(5) The Secretary may assess a civil penalty against any person of up to $1,000 a day from the date of the person's failure or refusal to file the information required to be

filed by such person with the Secretary under regulations prescribed pursuant to section 1021(g) of this title.

(6) If, within 30 days of a request by the Secretary to a plan administrator for documents under section 1024(a)(6) of this title, the plan administrator fails to furnish the material requested to the Secretary, the Secretary may assess a civil penalty against the plan administrator of up to $100 a day from the date of such failure (but in no event in excess of $1,000 per request). No penalty shall be imposed under this paragraph for any failure resulting from matters reasonably beyond the control of the plan administrator.

(7) The Secretary and the Secretary of Health and Human Services shall maintain such ongoing consultation as may be necessary and appropriate to coordinate enforcement under this subsection with enforcement under section 1320b–14(c)(8) of Title 42.

29 U.S.C. § 1132(c).

as well as lost earnings pursuant to 29 U.S.C. § 1132(a)(3).[6] Plaintiff maintains that reasonable attorneys' fees and costs are warranted because plaintiff "has needlessly incurred approximately $10,000 in attorney fees and costs." Plaintiff's Brief in Support of Motion for Summary Judgment, p. 17. According to plaintiff, "[t]he amount of his pension benefit claim is just over $42,000. Defendants dragged their feet ... for over two years and have yet to provide any legal authority or cite any Plan provision that justifies their calculation...." *Id.* at p. 18.

Because plaintiff has failed to show any bad faith or other prejudice resulting from defendants' denial of his claim, the Court will deny plaintiff's request for attorneys' fees and costs. The parties shall bear their own attorneys' fees and costs in the case at bar. Defendants interpreted the QDRO consistently with the order's plain language, as discussed *supra,* and did not act in an arbitrary or capricious manner in denying plaintiff's claim for a recalculation of benefits.

Similarly, with respect to plaintiff's request for an award of lost earnings pursuant to 29 U.S.C. § 1132(a)(3), the Court finds that plaintiff is not entitled to such an equitable remedy under these facts. The amount "withheld" from plaintiff was an amount to which plaintiff was not entitled under the terms of the QDRO. Therefore, plaintiff may not now recover any alleged lost interest incurred as a result of this so-called "withholding." There has been no showing of unjust enrichment or improper behavior on the part of defendants. *See Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692, 697 (7th Cir.1991).

As a final note, defendants have suggested that plaintiff's proper remedy, if any, would be to seek relief from the state court which issued the QDRO in question. According to defendants, this remedy is appropriate if plaintiff is claiming that defendants' interpretation of the scope of the QDRO does not comport with his intention or understanding upon entering into the divorce agreement with his ex-spouse. Plaintiff balks at the suggestion, however, arguing that such relief would result in adverse tax consequences. This Court is in agreement with defendants. Petitioning the divorce court to modify Section 4 of the QDRO represents plaintiff's most appropriate remedy, especially in light of plaintiff's asserted position throughout the instant litigation that his claim for recalculation has more to do with the terms of the QDRO and less to do with the terms of the ERISA-qualified Plan.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment, which the Court has construed as a motion for entry of judgment seeking reversal of the plan administrator's decision to deny plaintiff's claim, is **DENIED;**

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment, which the Court has construed as a motion for entry of judgment seeking affirmation of the plan administrator's decision to deny plaintiff's claim, is **GRANTED;**

**IT IS FURTHER ORDERED** that plaintiff's request for statutory damages for defendants' failure to timely provide

---

**6.** Section 1132(g)(1) provides as follows:
 In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
29 U.S.C. § 1132(g)(1). Section 1132(a) sets forth the requirements for standing to bring actions for civil enforcement under ERISA. Specifically, a civil action may be brought

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....
29 U.S.C. § 1132(a)(3).

ERISA documents pursuant to 29 U.S.C. § 1132(c) is **DENIED;**

**IT IS FURTHER ORDERED** that plaintiff's request for attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1) is **DENIED;**

**IT IS FURTHER ORDERED** that plaintiff's request for equitable relief in the form of lost earnings pursuant to 29 U.S.C. § 1132(a)(3) is **DENIED;** a judgment in accordance with this order shall be entered forthwith.